## CHARLESTON

### STATE *v.* GROVE.

Submitted February 21, 1907.· Decided April 17, 1907.

1. RAPE—*Conspiracy to Commit—Indictment.*

   An indictment charging a conspiracy, having for its object the commission of rape, and averring, in apt and sufficient terms, the commission of such offense, in pursuance thereof, is a good indictment for rape, under section 15 of chapter 144 of the Code, and not an indictment for criminal conspiracy under sections 9 and 10 of chapter 148 of the Code, and does not charge both rape and conspiracy. (p. 699.)

2. INDICTMENT—*Sufficiency.*

   An indictment against several persons, described in the order, noting the finding and return thereof, as an indictment against one of them, is good against the person named in the order. (p. 700.)

3. SAME—*Indorsement,*

   Want of the usual memorandum on the back of an indictment, "a true bill" signed by the foreman of the grand jury, does not vitiate the indictment. (p. 700.)

4. CRIMINAL LAW—*Plea—Issue.*

An order in a criminal case, reciting the entry of a plea of not guilty, by the prisoner, and then saying "and the attorney for the state doth the like and issue is joined thereon," shows that the issue was made up and will sustain a judgment. (p. 700.)

5. SAME—*Declarations of Conspirators.*

In a case in which the evidence establishes a *prima facie* case of conspiracy, acts and declarations, done and made by the parties, in pursuance thereof, not in the presence of one another, are admissible in evidence. (p. 701.)

6. SAME—*Bad Character—Evidence.*

It is error to admit evidence of the bad character or reputation of a prisoner, who has not put his character in issue. (p. 703.)

7. WITNESSES—*Impeachment—Bad Character.*

Bad reputation as a basis for impeaching testimony must be limited to reputation as to truth and veracity. (p. 703.)

8. SAME—*Instructions.*

An instruction, given in the trial of an indictment for rape, telling the jury they may find the prisoner guilty, without finding that he conspired with others to commit the offense, as averred in the indictment, if, from the evidence they believe him guilty, is unobjectionable. (p. 703.)

9. SAME.

It is error to give an instruction on the trial of an indictment for rape, directing particular attention to certain facts, attendant upon the act of sexual intercourse, as stated by the prosecuting witness, including her denial of consent and affirmation of resistance to the extent of her ability, mere conclusions or opinions, not binding upon the jury, and ignoring all the other evidence bearing on the question of consent, and telling the jury they should find for the state, if, from the evidence, they believe them to be true. (p. 704.)

10. RAPE—*Instructions.*

An instruction, requested on a trial for rape, to the effect that, if a woman consent to sexual intercourse through fear of anything other than death or great bodily harm, the man with whom she so has such intercourse is not guilty of rape, is properly refused. (p. 705.)

Error to Circuit Court, Greenbrier County.

Paxton Grove was convicted of crime, and brings error.

*Reversed.*

T. N. REED, OSENTON & McPEAK, and W. H. SAWYER, for plaintiff in error.

C. W. MAY, Attorney General, for the State.

POFFENBARGER, JUDGE:

Paxton Grove, seeking relief from a judgment of the circuit court of Greenbrier county, sentencing him to imprisonment, for a period of seven years, on a conviction of the crime of rape, assigns a number of errors in the rulings of the court.

By a demurrer and a motion to quash, he challenged the sufficiency of the indictment, which charged him, together with three other persons, with having unlawfully combined, conspired, confederated and agreed to assault, ravish and carnally know one Nora Breeden, by force and against her will, and with having unlawfully and feloniously, in pursuance of such agreement and conspiracy, assaulted, ravished and carnally known, by force and against her will, the said Nora Breeden. The objection to the indictment is that it charges a conspiracy under sections 9 and 10 of chapter 148 of the Code, known as the "Red Men's Act," and also rape under section 15 of chapter 144 of the Code. An indictment charging conspiracy and murder, very similar to the one here under consideration, in respect to the matters relating to conspiracy, was held good in *State* v. *McCoy and others*, decided by this Court at the present term. This indictment does not purport to have been found under the "Red Men's Act." The purpose of that statute was to create new offenses. A conspiracy to inflict any sort of punishment or bodily injury was made a misdemeanor, and the infliction of any sort of punishment or bodily injury in pursuance thereof was made a felony. This statute contemplates punishment, or injury not felonious under other statutes or by the common law. This indictment does not charge a conspiracy to inflict punishment or bodily injury in general terms. It charged a conspiracy to do that which, by the common law, as well as by our statute, is a felony. In the commission of that offense, a conspiracy may be involved and included, not as the substantive offense, punishment for which is sought, but as a ground or means by which some of the parties charged with rape may be convicted. A good illustration of

this is the case of *State* v. *Prater*, 52 W. Va. 132, in which we said, at page 145, "As this is not a prosecution for conspiracy, as a substantive crime, but for murder in which the conspiracy, if any, takes a subordinate place and is to be considered merely as one of the facts tending to prove the guilt of the accused, the admissibility of the acts and declarations in question is to be considered in the light, not only of the law relating to conspiracy, but also in that of the other principles just mentioned." The charge of conspiracy may not have been necessary, but, if not, it may be treated as mere surplusage. After its elimination therefrom, what remains would sufficiently charge the crime of rape. The court did not err in refusing to quash the indictment on this ground. The want of any endorsement on the indictment of the words "A true bill," signed by the foreman of the grand jury, is also relied upon. The record discloses an order, showing the empaneling of a grand jury, their charge by the court, and their return and presentment of an indictment "against Pack, *alias* Paxton, Grove for a felony, a true bill." Although the indictment is against several and was recorded as an indictment against only one of the several persons, it is good as to him. *State* v. *Compton*, 13 W. Va. 852; *Drake & Cochran's Case*, 6 Grat. 665. As to the necessity of the endorsement of the memorandum, "A true bill," on the back of the indictment and the signature of the foreman thereto, a doubt is expressed in *State* v. *Heaton*, 23 W. Va. 773. *Price's Case*, in 21 Grat. 846, expressly decides that the want of such an endorsement does not vitiate an indictment. The same conclusion was reached in *White* v. *Commonwealth*, 29 Grat. 824. The opinions in both cases were written by Judge Moncure, and his reasoning amply satisfies us of the correctness of his conclusion. Hence, there was no error in the overruling of the motion to quash, in so far as it was based on the want of such a memorandum.

A motion in arrest of judgment was based upon alleged want of an issue made up on the record. The order shows that the defendant entered his plea of not guilty and then says: "The Atty. for the State doth the like and issue was thereon joined." The contention is that this brings the case within the decisions in *State* v. *Douglass*, 20 W. Va. 770,

*State* v. *Brookover*, 42 W. Va. 292, and numerous others referred to in those decisions, holding that an issue made up by the pleadings is essential to the validity of a judgment. The order in this case, however, says issue was thereon joined. There could not have been a joinder in issue upon anything other than the plea of not guilty. No other plea was entered. The recital that the attorney for the State entered such a plea is an absurdity, and affords no ground for the contention that it overthrows the sensible portion of the order and proves that no issue was made up. Though the order lacks formality, we think it shows that the parties were at issue when the trial was had. It impliedly says both parties put themselves upon the country. Otherwise it cannot be true as stated in the order that issue was joined on the plea. The affirmation that issue was joined is broad enough in its terms to include the doing of all that was necessary to effect a joinder of issue. The construction of the order is sustained by those decisions which held a recital in an order that the jury were sworn the truth to speak upon the issue, or of and upon the premises, has the same effect as if it had set forth in full the oath administered. See *State* v. *Kellison*, 56 W. Va. 690: *State* v. *Musgrave*, 43 W. Va. 672; *State* v. *Ice*, 34 W. Va. 244; *State* v. *Sutphin*, 22 W. Va. 771; *Lawrence's Case*, 30 Grat. 849.

It is necessary to the disposition of certain assignments of error, relating to the admission of evidence, concerning the acts and declarations of some of the parties jointly indicted, to disclose here some of the material facts which the evidence tends to prove. The prosecutrix, together with a man named Hunter Merica, alighted from a railway train at the station at Ronceverte near midnight. They claimed to have eloped from some place in Page county, Virginia, intending marriage. All the hotels in Ronceverte being full, so they could obtain no lodgings, they remained in the waiting room of the station. The prisoner was the yardmaster of the railway company at that place, having charge of the entire yard. He, together with the persons indicted with him, having become aware of the purpose intended by the prosecutrix and her companion, and having observed their peculiarties and suggestive conduct, became active and interested respecting them. They were seen in conference

together in and about the station. A bogus telegram was prepared by some of them, purporting to demand the arrest of a man and woman who had gotten off of the train on which the prosecutrix and her companion had arrived. Two of them called Merica out of the waiting room, took him around the station, and pretended to read to him the telegram, authorizing the arrest 'of himself and the girl, and he accompanied them to the town prison, or what was represented to be the town prison. This transaction covered the space of about an hour. Soon after Merica had left, the prisoner informed the prosecutrix that if she would go with him he would find her a place for lodging over night, informed her of the arrest of Merica and advised her to go with him to avoid arrest. She having agreed to accompany him, he helped her out of the window of the waiting room, and accompanied her to the rear of the church at some distance from the station, where it is alleged the crime was perpetrated, in the absence of her companion. A number of witnesses testified to circumstances, showing the association of the prisoner with the parties who took the girl's companion away, and to admissions on his part that those persons were associated with him and aided him in accomplishing the separation of the girl from her companion, for the purpose of enabling him to accomplish his purpose with her. To detail all this evidence would impose upon us a useless and burdensome task. It is not denied that the evidence tends to sustain the theory of the State in reference to this relationship among the parties indicted. Notwithstanding the existence of all this evidence of association, combination and conspiracy, and of acts done by the parties, constituting parts of the *res gestae*, it is insisted that the court erred in permitting the station agent to testify, concerning the preparation of the bogus telegram in his presence, and in permitting Merica to testify to what was done and said to him at the town prison, including the obtaining from him of a certain sum of money by way of inducement, to the pretended officers, to release him from custody. The evidence tends to show immediate and direct connection of all these facts and circumstances with the main fact in issue, and, under principles declared in *State* v. *Prater*, 52 W. Va, 132, were admissible. In *St. Clair* v. *United States*, 154 U. S. 936, Mr.

Justice Harlan said: "Circumstances attending a particular transaction under investigation by a jury, if so interwoven with each other and with the principal fact that they cannot well be separated without depriving the jury of proof that is essential in order to reach a just conclusion, are admissible in evidence." Wharton on Evidence section 259, says: "The *res gestae* may be, therefore, defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone as well as done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for or emanations of such act, and are not produced by the calculating policy of the actors." The pretended arrest of Merica was a part of the general scheme and design, which the evidence tends to establish and the extorting of the money was a mere incident thereof. It was one of the steps in the arrest and release by which the companion of the girl was kept away from her long enough to allow the prisoner to accomplish his purpose. The court did not err in admitting this testimony.

The prisoner having testified in his own behalf, a number of witnesses were called to impeach him, among whom was one Robert Smith, who, upon his examination, said he was acquainted with the reputation of the prisoner in the community in which he resided, and that it was bad, and was then permitted to say that, from his general reputation, he would not believe him on oath. That this was improper testimony cannot be doubted. The prisoner had not put his character in issue and the State could not, for that reason, attack it. As the basis for impeachment, bad reputation for truth and veracity only was admissible.

Two instructions given at the instance of the State are complained of. One of these is challenged because it tells the jury they may convict without finding there was a conspiracy. As it is plain, from what has been said, concerning

the indictment, that it did not charge conspiracy as a sub-
stantive offense, but only as an incident of, or as involved
in, the charge of rape, there could be a conviction under
the indictment, if warranted by the evidence, although it
failed to establish conspiracy, the. instruction was proper.
The other instruction, after submitting to the jury hypotheti-
cally circumstances attending the act of sexual intercourse,
to which the prosecutrix testified, proceeds as follows: "to
which intercourse she did not consent, and that she resisted
all she could, that this would constitute by force and against
her will, and the jury should find him guilty." The lan-
guage that she resisted all she could is the substance of what
the witness said about her resistance. By giving this in-
struction, the court did not intimate to the jury that the
prosecutrix could withhold her consent, so as to make the
act of the prisoner felonious, without resisting to the extent
of her ability to do so. On the contrary, they were told that
they must find that she expressed her non-consent by re-
sistence to the extent of her ability. It is not perceived how
the instruction, correctly stating the law, could be vitiated
by the circumstance that the witness expressed herself in
substantially the terms used in the instruction. But we
think the instruction is bad in this, that it emphasizes and
lays stress upon certain parts of the testimony of the pros-
ecuting witness, by directing particular attention to it, while
passing silently over the balance of it. In it, the court told
the jury that, if they believed the prisoner pulled the wit-
ness upon the ground, then pushed her over and had inter-
course with her, she not consenting, but resisting all she
could, they should. find him guilty. His pulling her
down and pushing her over are but two of the
numerous facts, detailed by her, many of which tend
to prove her willing participation in the transaction of which
she complains. Much of her conduct, both before and after
the completion thereof, has this tendency, and the instruc-
tion should have been general in its terms, making
no reference to any specific facts or circumstances, or it
should have given them all. In bringing to the attention of
the jury only those two which tended most strongly to crim-
inate the prisoner, and separating them from all that argued

his innocence, the instruction was highly prejudicial. For the proposition that an instruction must not give undue prominence to particular parts of the evidence, see the collation of authorities in Ency. Dig. Va. & W. Va. Vol. 7, p. 723, among which are *State* v. *Dodd*, 54 W. Va. 289; *Ward* v. *Brown*, 53 W. Va. 227; *Tower* v. *Whipp*, 53 W. Va. 158; *State* v. *Prater*, 52 W. Va. 132; *State* v. *Morrison*, 49 W. Va. 210; *Parkersburg Ind. Co.* v. *Schultz*, 43 W. Va. 470.

The prisoner requested an instruction to the effect that if a woman consent to sexual intercourse with a man, the latter is not guilty of rape, even though she consented through fear, unless it was fear of death or great bodily harm. The court having refused to give this, the words "great bodily harm," were changed "to serious bodily harm" and · the court was again requested to give it but refused. Then the court struck out the word "serious," making it read "bodily harm," and gave the instruction as so modified.

This instruction fails to distinguish between that class of cases in which reasonable ground to fear death or great bodily harm, justifies or excuses the act of one having cause for such apprehension, in doing that which, if done under other circumstances, would be a criminal act; and the class of cases in which the act done is, or may be, attributable to mental duress, from whatever cause it may have resulted. The two propositions are widely different. In the former, the actual mental condition is not the vital fact; in the latter it is. Fright or terror, so intense as to dethrone reason, for the time being, no matter what particular injury is feared, makes void any consent obtained thereby; and he who takes or obtains a liberty or other thing thereunder cannot thereby justify or excuse his doing so, if by any means, he produced that state of mind for the purpose of obtaining it. As the true inquiry was not the nature of the injury feared, nor the particular ground of fear, but the actual mental condition of the prosecutrix, respecting her power to act voluntarily, or give her consent to the act of the prisoner, the instruction requested unduly narrowed the range of inquiry, allowed to the jury by the law, and the court did not err in refusing it. As modified by the court and given, it could not

have wrought any injury or prejudice to the prisoner, for which reason he cannot complain of it.

As the judgment must be reversed, for the errors noted, the ruling of the court on the motion to set aside the verdict, and the motion to quash the panel of the jurors, for the alleged want of a *venire fucias*, will not be reviewed.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.*