# CHARLESTON.

STATE *v.* MERT WAMSLEY

(No. 6742)

Submitted October 21, 1930.   Decided October 28, 1930.
(Rehearing Denied December 5, 1930.)

*Wm. T. George* and *E. L. Maxwell,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *R. A. Blessing* Assistant Attorney General, for the State.

WOODS, JUDGE:

Having been adjudged guilty of the crime of rape and sentenced to seven years in the penitentiary, the defendant brings error.

From the viewpoint of the State, the evidence is as follows: Nina Paugh, the prosecutrix, was sixteen years of age on the 18th day of April, 1929. On the afternoon of August 16, 1929, the prosecutrix, who lived with her father on a farm about seven miles from Elkins, was working with the family in the hayfield, which was near the house. About five o'clock her father and step-mother went to Elkins with their trade. A few minutes thereafter Nina left the smaller children and went to the house to get supper. No other member of the family was there. While at the house, she heard a car approaching and on going out into the yard found Mrs. Leslie Roy and John Corley, who had stopped to return a bucket that Mrs. Roy had borrowed that morning to use picking berries on the mountainside. While she was talking to them, the defendant and his co-indictee, Olaf Martin, drove by in an automobile. After driving on a short distance, they backed their car in front of the gate at the Paugh home just as Mrs. Roy and John Corley were leaving. The defendant spoke to Miss Paugh saying, ''You know me, don't you?'' He then told her he had worked at Caplingers, and Nina remarked, ''You're not the Coberly boy that worked there.'' He stated he was. He then got out of the car and asked Miss Paugh to take a car ride. She refused. She then went into the house, and was followed by defendant and the Martin boy. Martin was introduced as Jackson. De-

fendant sat down, as did Miss Paugh, and Martin stood up. The Martin boy stepped on the outside of the door where he apparently could observe traffic and the approach of any one. Defendant grabbed prosecutrix, threw her on the bed, drew her bloomers "down by her knees," and forced her to have intercourse with him. She screamed and resisted and fought as best she could. She was frightened with the two men, one watching for passing traffic, and the other committing the assault. After defendant had accomplished his purpose, prosecutrix, in an attempt to get from the house and call to those in the field for help, made an excuse to look at the potatoes which were cooking. As she started out of the house, Martin, who was standing by the door grabbed her and started to take her back into the house. Some cars were passing at that time and Wamsley cried, "wait a minute." This was the last prosecutrix knew for the time being. When she came to herself a few moments later, she was lying on the floor with her head under a chair, with her bloomers stripped from one of her legs and hanging on the other. She staggered out into the yard, vomiting and screaming, and in about five minutes time had notified her cousin, Madge Caplinger, what had occured.

Wamsley and Martin admitted practically all of the statements of Nina, except those relating to the culpable action complained of by her. To this they entered a stout denial. They admitted that they gave assumed names, but sought to place the onus of this on Nina for mistaking Wamsley, early in the meeting at the yard fence, for the Coberly boy "who had worked at Caplinger's," whom she had known. The boys had been at the Caplinger home a few minutes before they made their appearance at the Paugh home, to see Virginia Vandervort and Mary Harper, two girls who were visiting there, and asked them to attend a carnival in the neighborhood, or go riding with them, but they refused. They said that they went into a house with Nina because she had made an excuse to go in "to look after her supper," inviting them in, and the boys laughingly replied that they "were hungry," and followed her in the house; and after sitting there talking with her awhile (a very few minutes), they left. The Caplingers, who

were related to Paugh's, lived about an eighth of a mile from the Paugh home. Madge Caplinger, 22 years old, saw Nina at the creek near her home shortly after the occurrence, in a highly excited and nervous condition and screaming. She ran down to the creek, and Nina, who was crying, threw her arms around her neck. After she told what had happened, Madge asked her if she wanted to go back to her father's house or go home with her, and she said she would do the latter. She was taken to the Caplinger home and put to bed, where she remained until Wednesday, after which she was taken to Elkins and placed in the hospital where she remained until Sunday. She was examined by Dr. Harper on Friday evening, a few hours after the alleged offense. He found her in a very nervous condition, complaining of a pain in the side of her head and injury to one of her fingers. He found a drop of blood inside of the vaginal orifice. The side of her head and her finger seemed very tender and susceptible to pain. Dr. Perry examined Nina on Monday at the instance of Martin for the purpose of ascertaining whether she was able to attend the preliminary trial of the boys who had been arrested. After taking her temperature and blood pressure, the physician pronounced her unable to attend.

The assignments of error are three: (1) failure to strike out the evidence of the state because it was a joint indictment against defendant and another, charging them with the commission of the crime of rape, which from its nature could not in fact have been committed by but one, and no conspiracy charged therein; (2) the giving of state's instruction number two; and (3) the refusal of the court to set aside the verdict because the same was not justified by the evidence.

The first point of error raises a question that is novel. No demurrer was made to the indictment. The question was raised at the conclusion of the state's evidence by a motion to strike it from the consideration of the jury. At common law persons present aiding and abetting, where rape is a felony, are principals equal in guilt with the direct perpetrator. Bish. Crim. Law (9th Ed.) sec. 1135. Mr. Bishop further says in Crim. Proc., sec. 6(a): "It is not ill to charge the principal of the second degree with what he cannot do alone, where he

can incur the legal guilt by aiding the principal of the first degree; as, that a man and woman, two defendants, ravished another woman. Yet practically it would be better to put the allegation, in a case of this sort, according to the outward fact, not the legal; since then certainly the jury would not be perplexed." But in the case at bar it is possible for either one of the parties charged to be guilty of the act charged. All persons who were present aiding and abetting the commission of the fact are principals in the second degree at common law and may be charged in the indictment as having done the act. 1 Russel on Crimes, pp. 26-29. The same author says in the 7th English edition, at page 114: "Where several are present and abet a fact, an indictment may lay it generally as done by all, or specially, as done by one and abetted by the rest. Or if the punishment for principals in the first and second degrees is the same, all may be indicted as principals in the first degree." Our statute makes provision for the punishment of the principal of the second degree the same as if he were principal in the first degree. Code, chapter 152, section 6.

The Supreme Court of Missouri was met with a case, such as we have here, in *State* v. *Harris*, 150 Mo. 56. In that case three defendants were indicted jointly for rape. The court said: "It was entirely competent and proper to charge all of these defendants jointly. It by no means follows that because each could not have been guilty of the sexual act at the same moment that two of them could not have been present, as testified by the prosecutrix, aiding and abetting the defendant by holding her down while the defendant outraged her person." The case of *Commonwealth* v. *Patrick*, 80 Ky. 606, cited by counsel for the defendant, is not in point because there the statute had not imposed the punishment of aiders and abetters according to common law rules. The principal was made guilty of a felony while the aider and abettor was guilty of only a misdemeanor. In Georgia there is a statute making principals of the first and second degrees punishable alike. The court there holds that no distinction need be made of them in the indictment. *Bradley* v. *State*, 128 Ga. 20. And such has been the general practice in our state. The question at issue here was exhaustively treated in *State* v. *Powers*, 91 W. Va. 737. There Powers

and three companions were indicted as principals for stealing an automobile under the usual count in larceny. Powers was first tried and on appeal it was urged that he was not shown to be near the garage at the time one of his companions was seen to have taken the car therefrom, and that no charge of conspiracy was made in the indictment; hence Powers could not be indicted as principal. The court held: "Where two or more persons conspire or confederate together to commit larceny, and each takes some part in the commission of the crime, one or more to commit the act while the others watch to prevent surprise, or station themselves at a convenient distance to favor escape, or assist in the asportation or concealment of the stolen property, thus lending aid and encouragement to the one who commits the act, all are in a common cause and are constructively present at the taking, if the larceny, in fact, be committed, and all are punishable as principals." JUDGE LIVELY's reasoning in that case need not be repeated or enlarged. Again, the case of *State* v. *Grove,* 61 W. Va. 697, is enlightening on this question. There was an attempt to charge Grove with committing a rape and several others as conspirators with him. In upholding the indictment as good as to Grove, the court said: "The charge of conspiracy may not have been necessary, but if not, it may be treated as mere surplusage. After its elimination therefrom, what remains would sufficiently charge the crime of rape. * * * Although the indictment is against several and was recorded as an indictment against only one of several persons, it is good as to him." So we say that according to precedent and practice, the indictment here is good as to Wamsley. His co-indictee, Martin, according to the testimony of the state, stood guard at the door and was in the immediate presence of the prosecutrix and defendant Wamsley during the entire transaction. The court specifically instructed the jury, at the instance of the defendant, to not regard "as evidence against Wamsley any statements as to what transpired between the prosecuting witness and Martin not in Wamsley's presence or in which he did not participate."

Was the jury misdirected? The instruction complained of is as follows:

"The Court instructs the jury that rape is the having of sexual intercourse with a woman against her will by force. Before the jury will be warranted in convicting the accused on a charge of rape, they must be satisfied from the evidence beyond all reasonable doubt that the act of sexual intercourse was accomplished by force and against the will of the prosecutrix and, considering under the evidence the time, the place, the relative physical strength, and endurance of the prosecutrix and the accused, the whole situation as it confronted her, and all the circumstances in the case, it must appear from the evidence beyond all reasonable doubt that the prosecutrix resisted her assailant by every means at her command until she was overcome by his superior strength.

And, if you believe from the evidence in this case beyond a reasonable doubt that the defendant in company with Olaf Martin went to the home of Nina Paugh, the prosecutrix, on or about the 16th day of August, 1929, entered the house in company with the said Nina Paugh and Olaf Martin, and that while the three of them were present at said house and alone, he, the said Mert Wamsley, grabbed the said Nina Paugh, threw her down on a bed in said house, and with force and violence and against the will of the said Nina Paugh, she resisting the said Mert Wamsley by every means at her command, forced her to have sexual intercourse with him, at the time and place alleged in the indictment, then you should find the defendant guilty of rape as charged in the indictment."

The counsel for defendant argues that the instruction violates the well established rule of calling specific attention to parts of the evidence to the disregard of other evidence relevant to the matter in issue. Does it? As we interpret the instruction, it is general in character. While it may use one or two of the terms used by the prosecutrix, it was not intended to cover the whole case. In a case such as this, it would be practically impossible to embody all the evidence in one instruction. So the theme of the instruction was what constituted rape. From a careful consideration of it, persons of average intelligence, such as the jury in the case must be con-

ceded to be, could gain no other impression that it was not rape that the defendant committed upon the prosecutrix unless she resisted to the utmost extent by all means within the woman's power. It must be read in the light of all other instructions given by the court. At the instance of the defendant, the court gave instructions, fifteen in number which summarized specifically instructed the jury that if they entertained a reasonable doubt whether an outcry was made by the prosecutrix that it was a strong circumstance against her, tending to show such intercourse if had, was by consent, that inasmuch as the case rested on the testimony of the prosecutrix, that her testimony must be scanned and weighed with caution, and that her statements that she did resist to the utmost is not sufficient to show such resistance; but that this fact must be determined by the jury from all the facts and circumstances in evidence, the necessity of showing that there was a penetration, and that it was their duty to take into consideration the presence or absence of bruises, whether her clothing was torn.

Viewing the instructions as a whole, can we say that the jury was misled by the state's instruction? True, this Court, in *State* v. *Grove, supra,* held an instruction, similar in some respects to the one here under consideration, erroneous. In that case only the question of consent was present. That whole case seemed not to have been free from grave doubt. There were many acts of the prosecutrix there which had a tendency to show consent on her part. When the instruction complained of here is read with all of the defendant's instructions, we do not see that we can say that it violates the principle of calling attention particularly to specific parts of the prosecutrix's testimony to the exclusion of other evidence relative to the issue involved, or is otherwise prejudicial. Such holding is well buttressed in our decisions. *State* v. *Porter,* 98 W. Va. 390; *State* v. *Long,* 88 W. Va. 669; *State* v. *Davis,* 74 W. Va. 657; *State* v. *Clark,* 64 W. Va. 625. Likewise, the jury could not have been misled by that portion of the quoted instruction which the defendant contends impliedly told the jury that the carnal intercourse had been committed, for the instructions offered and given for the defendant specifically told them that

it took both the fact of sexual intercourse with a woman and that such act was against her will to constitute the offense of rape, and that if upon the whole evidence, there was a reasonable doubt whether such intercourse was had, and if had, whether it was with the consent of the prosecutrix, then they should acquit.

The last question to be determined, is the verdict against the evidence? According to the evidence of the prosecutrix, was the verdict of the jury warranted? Special stress is placed upon the proposition that has been prevalent since the days of Lord Hale against convicting a person of rape on the uncorroborated testimony of the prosecutrix. In some states it is required that her story must be corroborated. In this state and in Virginia there is no such statute. We have held that such conviction may be had upon her testimony alone. *State v. Martin*, 102 W. Va. 107. But if corroboration is necessary, has not that element been shown here? Barely across the line of demarcation so far as age is concerned, as between statutory rape and common law rape, her case necessarily appeals with a higher degree of force than if she were a mature woman. For, according to the modern and humane rule, ''if the girl is very young, and of a mind not enlightened on the question, this consideration will lead the court to demand less clear opposition than in a case of an older and more intelligent female, or even lead to a conviction where there was no apparent opposition.'' 22 R. C. L., p. 1181. So, no hard and fast rule can be laid down on the subject of corroboration. Each case must depend upon its own merits and surrounding circumstances. Her testimony is corroborated by reason of her mental and physical condition immediately following the alleged rape, a condition which lasted for over a week and necessitated hospital care, by the making of complaint at the earliest possible moment, and by the admitted presence of the defendant at the time and place the act should have been committed. The defendant and his co-indictee went into the home under assumed names. Whatever their relation might have been with Nina Paugh was under this guise. The physician testified that she was so well developed that intercourse may have been had without signs thereof remaining upon her person; but

that a drop of blood was found in the vaginal orifice. It is sufficient, says the law, if she is corroborated as to the material facts and circumstances which tend to support her testimony from which the inference of guilt may be drawn by the jury.

While some members of the court are inclined to the belief that there is somewhat an air of improbability that under all the circumstances disclosed in the record the crime was committed, still the question of the credibility is one peculiarly for the jury, and we all believe that their finding must be respected as final. The defendant received at the hands of the court exceedingly liberal instructions governing every theory of the case upon which he was entitled to go to the jury. He had a fair and impartial jury, and was defended by able counsel. As an appellate court, we would not be warranted in disturbing the verdict. *State* v. *Porter, supra; State* v. *Toney,* 98 W. Va. 236; *State* v. *Hunter,* 37 W. Va. 744; *State* v. *Morgan,* 35 W. Va. 260; *State* v. *Cooper,* 26 W. Va. 338; *State* v. *Betsall,* 11 W. Va. 703; *Grayson's Case,* 6 Grat. 712.

The judgment below is accordingly affirmed.

*Affirmed.*