# CHARLESTON

## STATE *v*. BARRICK.

Submitted June 9, 1906.   Decided November 20, 1906.

1.   RAPE—*Indictment—Sufficiency.*

An indictment charges that defendants "in and upon one Martha Harbert * * * feloniously did make an assault and her, the said

Martha Harbert * * * did ravish and carnally know;" is not bad for failing to aver that Martha Harbert is a female. (p. 577.)

2. INDICTMENT—*Sufficiency—Name of Accused.*
   An indictment names a defendant as "Charles Foyles, commonly called 'Happy Jack'" is not bad because of the use of the words "Happy Jack." (p. 578.)

3. RAPE—*Chastity of Prosecuting Witness.*
   As to evidence of reputation of a prosecutrix upon an indictment for rape touching her chastity. (p. 578.)

4. CRIMINAL LAW—*Joint Indictment—Separate Trials.*
   There is no error in a separate trial of one defendant on an indictment for felony against several simply because the record does not show that the state asked a separate trial. (p. 579.)

5. SAME—*New Trial.*
   A new trial in a felony case will not be granted upon affidavit that the prosecutrix giving evidence of the crime of rape upon her has since admitted that the accused was innocent. Her own affidavit making such admission cannot be used to obtain such new trial. (p. 579.)

6. SAME—*Statement of Prosecuting Attorney.*
   It is not error for a prosecuting attorney in an opening statement to the jury on a felony trial, to state the facts which he expects to be shown by the evidence. (p. 580.)

Error to Circuit Court, Wetzel County.

Livy L. Barrick and others were indicted for crime. Barrick was convicted, and brings error.

*Affirmed.*

J. W. McINTIRE, M. R. MORRIS, JOHN ROSS, JR., and E. EARL McINTIRE, for plaintiff in error.

C. W. MAY, Attorney General for the State.

BRANNON, JUDGE:

Livy L. Barrick was sentenced to the penitentiary for thirteen years upon an indictment in the circuit court of Wetzel county charging him and Fred Detwiler, Charles Pharet and Charles F. Foyle with rape upon the person of Martha Harbert, a girl between 17 and 18 years of age.

It is said that the court erred in overruling a demurrer to the indictment. One ground of demurrer is, that Martha Harbert is not alleged in the indictment to be a female. We hold that her Christian name imports that she is a female.

Who would understand it otherwise? Besides that, the indictment states that the defendants "in and upon one Martha Harbert * * * did make an assault, and her, the said Martha Harbert, then and there * * * feloniously did ravish and carnally know." The personal pronoun "her" tells that she is a female. Both these plain points were ruled in *Taylor's Case*, 20 Grat. 825. I will add that as the charge is that the defendants "ravished and carnally knew" Martha Harbert, it imports, in legal intendment, the feminine gender, as that could not be said of a man.

The other ground for the demurrer is that in naming Charles Foyles the words "commonly called 'Happy Jack,'" are used. It is only a further description of identity of the person; only an alias giving another name by which he is called, to meet proof. The law of criminal pleading allows the use of an alias name. 2. Cyc. 79. That name, "Happy Jack," is called by counsel an epithet, and it is said to have been used for derision and ridicule hurtful to the accused. We do not see force in this. And how could it harm Barrick when the name applied to another defendant?

The court overruled a motion to strike out all the evidence of Martha Harbert because she was brought into court upon a cot and reclined upon it while testifying, stating that she was sick. Can counsel sustain the claim that a suitor in court is to lose the testimony of a witness because he appears in court on crutches, or in an invalid chair or cot? No authority is given us for such an extreme stand.

Complaint is made that the court refused to allow answers to some questions whether the witness was acquainted with the reputation of the prosecutrix. Some of the questions did not fix the time of the prevalence of the reputation before the offense, as they must. 4 Elliott on Ev., section 3101. And the questions do not show that the witnesses obtained their knowledge of reputation before the transaction, before the community was agitated, and perhaps divided, in sentiment and opinion as to such reputation; before the *lis mota*. 1 Greenl. Ev., section 461 (1). It has been held that a witness called to impeach a prosecutrix on a trial for rape must confine himself to what he knew before the offense. *State* v. *Forshner*, 80 Am. D. 132; 53 Am. St. R. 482. I regard this sound law, and think that it would overrule the

point. But, aside from these considerations, there is another reason why there is no error in this matter, and that is, that the defense did not state what it was designed to show by the proposed examination. We may guess; but the witness did not answer to let us have his knowledge, nor was it shown what it was expected to develop. It was not stated that the witness knew anything on the subject. Many times has this been held a bar against such error. It is notable that counsel often overlook this matter in examination of witnesses. *State v. Clifford,* 59 W. Va. 1, (52 S. E. 981). In *Handley v. Railroad,* 59 W. Va. 419 (53 S. E. 625), it is said to be settled law. This objection applies to several other points of exclusion of evidence.

It is assigned as error that Barrick was separately tried, and that the record does not show that either he or the state asked a separate trial. The state can choose to try defendants jointly indicted either jointly or separately, if the court allows it. *State v. Prater,* 52 W. Va. 132. Moreover, no objection to a separate trial on the part of the prisoner appears in the record. If the point were tenable, that would have to appear; but he has no right to object. Nor is their anything in the fact that the record does not state that the state elected to have a separate trial. As there was a separate trial, we must assume that the state asked, and that the court granted it.

It is objected that the record does not show that the stenographer who took the evidence was sworn. We will presume that he was. At any rate, the court heard the evidence, and though it did use the stenographer's report of the evidence, the court certifies it as the evidence taken on the trial. There is no evidence in the record of the omission of an oath.

Upon a motion for a new trial Barrick filed the affidavit of his sister, Daisy Barrick, stating that the prosecutrix had admitted to her that the defendants were not guilty; that she had gone to the blacksmith shop, where she alleged the offense had been committed, of her own accord; that the defendants were no more guilty than she was; that she would not have prosecuted them but for persuasion by a certain person, and would not prosecute the case further. A similar affidavit of Zora Bland was filed. Some other affidavits were filed stating

that the prosecutrix declared that she would not have begun the prosecution but for such persuasion, and did not desire to go further with it. Barrick also filed an affidavit of the prosecutrix herself made after the trial and pending a motion for a new trial, stating that she went to the blacksmith shop on the night of the offence of her own accord, and met Livy Barrick in the shop, that it was not true that he had sexual intercourse with her by force and against her will; that she drank too much, and that she had been persuaded to make the charge, and having done wrong, wished to right it, as she could not rest and know that Barrick would go to prison for a crime which he did not commit.     Martha Harbert had given evidence to the very reverse on the trial, swearing that Barrick forced her to drink liquor, made her drunk, kept her in the shop all night, stripped her clothing from her, and that all four defendants being present ravished her, one choking and holding her while others accomplished the act. All were drinking. After Barrick's trial, and before the decision of his motion for a new trial, Detwiler was tried, and on his trial Martha Harbert gave evidence of accusation, and utterly denied making the statements to Daisy Barrick and Zora Bland and others contained in the affidavits above referred to. She was taken from the trial to a hospital, and while there sick was applied to to make the affidavit just spoken of as made by her. She swears that she was sick and nervous under the influence of morphia, which was prescribed by a physician to relieve rheumatic pains. Physicians say that she was nervous and weak. Her affidavit was prepared by an attorney acting for the prisoner. She says that she knew little of the paper—did not know ten minutes later what it contained. The persons who made the affidavit, gave evidence of her admission to the same effect as in their affidavits. It was agreed that their evidence, as also hers, given in the Detwiler case should be read on the motion of Barrick for a new trial so far as relevant thereto. These admissions of Martha Harbert are not strictly after-discovered evidence. To grant a new trial for after-discovered evidence this Court must see that the evidence is of such character that it ought to change the verdict. Some of the admissions are simply that the prosecutrix was persuaded to prosecute, and did not want the accused prosecuted. That

may have been from feeling of mercy, felt by many, and does not show an admission of innocence, but is a mere circumstance tending to show it. As to the admission made to Zora Bland, it was contradicted by the prosecutrix and disbelieved by the jury in the Detwiler trial. As to Daisy Barrick. Is it not highly improbable that she would be in possession of such an admission long before her brother's trial, as she says she was, and not disclose it to save him? She says she did not disclose it, as her father did not wish her to be a witness. Highly improbable. The second jury disbelieved it, a circumstance which may be considered as bearing on the credit of her and Zora Bland. Can we say that it clearly calls for another verdict? Shall we reverse a fair trial on doubt? New trials on after-discovered evidence, the law says, should be granted with great caution, because such evidence can be gleaned or trumped up in every grave criminal case. 14 Ency. Pl. & Prac. 807. As to the affidavit of the prosecutrix. The accused does not pretend in his affidavit that he will or can by her prove such admission of innocence. It is therefore not newly discovered evidence, to go before the jury by the evidence of the prosecutrix. And she was a witness on the trial. The truth is that all these admissions are to be used to impeach the girl as a witness, and it is everywhere held that verdicts will not be set .aside on after-discovered evidence to impeach a witness on the former trial. *State* v. *Williams*, 14 W. Va. 851; *Halstead* v. *Horton*, 38 *Id.* 727; *Carder* v. *Bank*, 34 *Id.* 38. Some cases say that to set aside a verdict based on false testimony, the witness must be convicted of perjury committed on the former trial. 14 Ency. Pl. & Prac. 810. This shows how slow courts are to annul trials on the ground that a witness swore falsely. If this were not so, where would trials end? But, a decisive view of the case is, that it is proposed to use Martha Harbert's admission that Barrick is not guilty to overthrow the verdict. "Newly discovered evidence of admissions of a prosecuting witness contrary to his testimony is not sufficient to authorize a new trial. Such evidence is not admissible as the admissions of a party to the action, but can be used only as impeaching evidence, and a new trial will not be granted for this purpose." 14 Ency. Pl. & Prac. 810,

Zora Bland was brought into court after the evidence had been closed, and the state's attorney was making the closing

argument, and the court refused to hear her evidence to prove that Detwiler was elsewhere till one o'clock at night. This is a discretionary matter and rarely ground for a reversal. *Livingstone's Case*, 7 Grat. 658.

The prosecuting attorney, in opening the case to the jury, said: "The information I have, and what I believe the evidence to be, is that she (Martha Harbert) was caught by the neck and held by this defendant and the other defendants and each ravished and raped her." This is no assertive statement. It cannot be held that the attorney intended it to be taken by the jury as evidence, or that the jury would act on it. It merely is a short statement of what he expected the evidence to be. It is very common for an attorney to make a statement of the salient facts of the case intended to be proved, in order to acquaint the jury with the case so as to enable them to apply the evidence. "It should develop facts' which the testimony is to establish, but none which the party is not in a situation to prove." 1 Bishop, Crim. Proced., section 969. It is allowable and usual. 2 Ency. Pl. & Prac. 706; *Dowda* v. *State*, 74 Ga. 12. Besides, if objectionable, there should have been a request for an instruction to disregard it before it can be used for error. *Landers* v. *Railroad*, 46 W. Va. 492. How could it possibly be ground of reversal? *State* v. *Shawn*, 40 W. Va. 1; *State* v. *Shore*, 31 *Id.* 491.

The evidence is elaborate and highly conflicting, and the case rests on its weight and credit, and under many cases this Court is forbidden to set it aside as contrary to the evidence. We have carefully examined all the points made by counsel. and have been compelled to conclude that we cannot reverse the trial. The case has been fairly tried by a jury under the supervision of a competent, fair-minded judge. He has carefully considered the application for a new trial, the only important feature of the case under the assignments of error. We have been careful the more as a young man, just 21 years of age, has had put upon him by a jury of his country the stigma of guilt of a deeply heinous crime upon a young girl, hardly out of childhood, under most harrowing circumstances. If guilty, and he has been so found to be by a jury, the penalty is light. It is only another instance of thousands where "King Alcohol" has wrought ruin. We are compelled to affirm the judgment.

*Affirmed.*