STATE OF WEST VIRGINIA *v.* HERBERT TOMBLIN

(No. 9246)

Submitted February 24, 1942. Decided April 7, 1942.

*W. F. Damron,* for plaintiff in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

KENNA, JUDGE:

The plaintiff in error was convicted of an attempt to rape and, under Code, 61-11-8, and Code, 61-11-16, as amended, an indeterminate sentence was imposed upon him by the Circuit Court of Lincoln County, the alleged intended victim being a girl twelve years of age who lived with her parents on a branch of Fourteen Mile Creek in Lincoln County.

The petition assigns fourteen different grounds of error, but since there are only four of these assignments briefed, we will confine ourselves to their consideration.

The first assignment briefed is that the grand jury was empanelled on March the seventeenth and did not report its findings until March the twenty-second, and was in session in excess of the statutory limit without being re-empanelled. Since these facts do not appear in the record before us, they cannot now be considered.

The assignment that the record fails to disclose the empanelling of any grand jury at the March Term of the Circuit Court of Lincoln County, we consider immaterial for the reason that it is not required that the record relating to a single prosecution should so show.

The third assignment of error attacks the validity of the statute prescribing indeterminate sentences, and that being a question that this Court has already passed upon, it is also unnecessary to discuss that. *Cohn* v. *Ketchum,* 123 W. Va. 534, 17 S. E. 2d 43.

The last assignment of error and the only one that we believe necessary to discuss briefly is that the proof, while perhaps sufficient to show an intention or desire to subject the girl to sexual intercourse, is not sufficient to prove any physical act constituting an attempt even on the State's theory concerning credibility.

The State's theory of the testimony is that on the morn-

ing of March 4, 1941, the girl referred to was at her home taking care of a baby three years old and a brother of six. Neither parent was on the place. At around eight o'clock, defendant rapped on the door and the girl opened it. Admittedly, the defendant was there in order to get whiskey, and before his arrival he had been drinking considerably. He demanded food which the girl supplied, and later went into the back room where there were three beds, laid down on one of them and called the girl. He made a number of demands that the girl submit, and after a short time she went into the front room, and, on the floor, began showing the baby pictures. Defendant after a short time came into the front room, fondled her and attempted to raise her clothes. She jerked away from him and threatened that if he did not leave, she would tell her mother. The girl, weeping, hid behind the stove in the kitchen. He remained until around two o'clock in the afternoon.

The defendant's version differs to some extent, although he admits that he had been drinking and came to the home for the purpose of obtaining whiskey. He lived within a little less than two miles of the home of the girl's parents. He says that he arrived there around eight o'clock, and almost immediately left when he found that the father and the father's grown son were not at home; that he came back somewhat later, searched the house for whiskey, went into the smokehouse, had the girl give him something to eat and lay down on a bed in the back room. Admits that he fondled the girl perhaps, but says that was his custom with children. He says that the girl's father was "mad at him" due to the fact that he and the father's brother a few years before the occurrence took place had a "shooting scrape," and yet testifies also that he had been at the girl's father's home several times for the purpose of purchasing whiskey from her brother.

Under the weight of authority, a child under the age of consent may become a victim of an attempt to rape when the circumstances show their actual consent on the theory that the existence of the main offense in spite of actual

consent is necessarily inclusive of the attempt, and we believe that if the legislative purpose rather than the artful use of words is considered, that is undoubtedly the correct viewpoint. If that be true, as we view this case, it follows that if the intention or purpose and a physical act looking to its accomplishment coincided in point of time, then the judgment of the Circuit Court of Lincoln County should be affirmed. *State* v. *Hager*, 50 W. Va. 370, 40 S. E. 393. Intention being a state of mind, if not admitted, can be shown only by surrounding circumstances.

According to the State's proof, there can be no doubt of the defendant's intention at one time to have carnal knowledge of the girl in question. Confining that intention to the time that the defendant was upon a bed in the back room and eliminating the time that the defendant had physical contact with the intended victim in the front room, would result in a reversal. However, under the State's testimony, there can be no doubt that the intention existed a short time before the physical contact. Neither can there be doubt that the defendant came in physical contact with the girl in the front room. Admitting that there is no proof that would establish beyond question the existence of the intention at the time of the physical contact which followed, on the other hand, there is no proof, save the accused's denial, which distinctly shows its absence. We believe that the consequence is that the coincidence of intention and physical contact was a question for the jury, and that there is sufficient proof to sustain the finding of it beyond all reasonable doubt. It is to be remembered that there is no denial of physical contact, and that the only possible doubt is created by the statement of the defendant concerning the purpose of that contact.

*Affirmed.*