79 S.E.2d 692 (1953)
STATE
v.
FRANKLIN.
No. 10573.
Supreme Court of Appeals of West Virginia.
Submitted September 23, 1953.
Decided December 1, 1953.
Dissenting Opinion January 12, 1954.
*694 Sam Lopinsky, Charleston, for plaintiff in error.
John G. Fox, Atty. Gen., Arden J. Curry, Asst. Atty. Gen., for defendant in error.
*693 RILEY, Judge.
Paul LeRoy (Leroy) Franklin, hereinafter designated as "defendant", was indicted by the grand jury impaneled in the Intermediate Court of Kanawha County at the January term, 1952, of that court. The defendant, along with another, was charged with the rape of the prosecuting witness. The indictment was a joint indictment against the defendant and another person, and charged them with forcibly ravishing and carnally knowing the prosecutrix. The person charged jointly with the defendant was convicted in the intermediate court and sentenced for the offense. On this trial the defendant was found guilty "of attempted rape as charged * * *", and judgment was entered on the verdict.
The defendant moved the trial court to reverse the judgment of conviction, set aside the verdict of the jury, and grant a new trial; and also moved in arrest of judgment. The trial court overruled the motions and sentenced defendant to an indeterminate term in the penitentiary of not less than one nor more than five years. The defendant then petitioned the Circuit Court of Kanawha County for a writ of error and supersedeas, which was refused on the ground that the judgment was "plainly right". To the order of the circuit court in *695 refusing defendant a writ of error and supersedeas to the judgment of the Intermediate Court of Kanawha County, the defendant prosecutes this writ of error.
The prosecutrix, who the record shows was at the time of the alleged rape fifteen years, six months and seven days old, testified that she is one of fourteen children of a man and his wife who live near Ranger in Lincoln County, West Virginia. She came to Charleston in the summer of 1951 with a female companion in an automobile, which was operated by a male companion of her friend, who is referred to in the record as "Van". They stopped at a motel for the night, their male companion sleeping in a separate room and the prosecutrix and her female companion sleeping in another room. During the night the prosecutrix entered the room of the man in scant attire, but she testified that she entered his room for a cigarette; that nothing improper occurred while she was in the room; and that the room was dark at the time she was there. Thereafter, the prosecutrix was employed at several places in Charleston, but on account of her age, she was not retained as an employee.
On the night of September 15, 1951, the prosecutrix states she was waiting for her female companion, who came with her to Charleston and whose work ended about twelve o'clock midnight. The defendant and his companion, who is now under sentence, were standing on Summers Street in the City of Charleston, when prosecutrix walked along the street. She was accosted by either the defendant or his friend. They talked with her for a while, and, according to her testimony, ascertained that she was looking for employment. Defendant and his companion represented that they could obtain employment for her at a coffee shop in the east end of Charleston. This conversation resulted in the prosecutrix and the two men entering an automobile owned or in charge of the defendant, with defendant driving, and the prosecutrix and defendant's companion occupying the rear seat of the automobile. They drove up the Elk River road, and stopped near the municipal incinerator for a short time. Thereafter, on account of the lights and people travelling on the highway, they drove up the Elk River road to another point, where the alleged rape took place.
The State's evidence shows that the companion of the defendant had sexual intercourse with the prosecutrix; that during such act the ankles of the prosecutrix were held by the defendant; and that she attempted to get out of the automobile before the act took place, but she was pulled back into the automobile by defendant. The defendant's companion gave him a ten dollar bill. Defendant switched the ten dollar bill and gave the prosecutrix a one dollar bill instead, which she took out of her bodice and threw on the ground.
The defendant admits that he had the impression that they were going out for the purpose of prosecutrix having sexual intercourse with his companion. The prosecutrix and the two men then came back to the City of Charleston by a somewhat indirect route.
The prosecutrix upon her return to the City of Charleston called the municipal police department. At the direction of a member of that department prosecutrix went to City Hall, where she was taken into the office of a member of the police department where she related the story of the occurrence. A member of the department caused her to retire to another part of the room and remove an article of her underwear. The article was examined by the interviewing officer, who testified that the garment had considerable blood on it. The officer, after some lapse of time caused by difficulty in obtaining a competent physician to examine the girl, had her taken to a hospital, where she was examined by a physician. This physician testified that prosecutrix had considerable blood on her person; that her hymen and fourchette were torn or ruptured, and gave as his opinion that prosecutrix had recently had sexual intercourse; and that prior to such intercourse, she had been a virgin.
After several days had elapsed, the defendant and his companion were confronted *696 by the prosecutrix at police headquarters. She identified the defendant's companion as being the man with whom she had had sexual intercourse, and the defendant as the person who had held her while the act was being committed upon her.
During the trial of the defendant the testimony of four witnesses, which was excluded by the trial court, was made a part of the record by an avowal of their testimony given at the trial of defendant's companion. The avowal shows that the prosecutrix, while staying at the home of one of the witnesses, was impatient of restraint and angered because she could not go out as often as she wanted to, and that she called her then employer an obscene name; and that the prosecutrix had three pairs of stockings which belonged to her employer at the time she left the home of her employer. Her then employer testified that on or about October 1, 1951, the prosecutrix, came to his house to attend to his children; and that when the prosecutrix started to leave his home a search of her baggage revealed a number of articles which did not belong to her, but belonged to the witness. The two above-mentioned witnesses' testimony concerned matters which occurred subsequent to the rape.
Another witness's testimony, offered by an avowal, was that the prosecutrix and her companion who came to Charleston with her, came to her house about the first day of September, 1951; that the prosecutrix would stay out late at night with her companion, coming in about three o'clock in the morning; and that thereupon the witness asked the prosecutrix and her companion to leave her home.
Another witness, whose testimony was excluded by the trial court, testified on an avowal, that while the prosecutrix was working at a lunch room in the City of Charleston, she told witness that she had been married and that her husband was dead; and while the girl was employed at the lunch room she would talk and "visit" with every man who came into the place. The testimony so rejected by the trial court and avowed had been rejected by the trial court at the trial of defendant's companion.
Defendant's witness, Delbert Rouse, a member of the Police Department of the City of Charleston, testified on an avowal that on one occasion while he was on duty on Summers Street in the City of Charleston, he accosted prosecutrix and directed her to go home, because she was scantily dressed, wearing only at the time "a little thing around her breasts and short pants on."
On or about the 23rd day of February, 1953, the prosecutrix made an affidavit to the effect that she had testified falsely at the trial of defendant's companion, and at the trial of defendant; that she willingly submitted to sexual intercourse with defendant's companion; and that there was no force applied by defendant's companion or defendant. She further stated in her affidavit that the act of sexual intercourse with defendant's companion was not her first act of sexual intercourse. This affidavit was attached to the petition filed in this Court for a writ of error.
The trial court, over defendant's objection and exception, refused to give defendant's instruction No. 3, which, in effect, would have instructed the jury that the defendant called "Leroy Franklin", and not defendant's companion, on the occasion of the alleged rape is the defendant in this case, and the result in the case, in which defendant's companion was convicted, should carry no weight in the determination of the instant case.
A number of other instructions were given at the request of the State and the defendant.
Defendant assigns as error: (1) The refusal of the trial court to set aside the verdict of the jury; (2) the refusal of the trial court to admit the testimony of the four witnesses whose testimony was avowed in the record; and (3) the refusal of the trial court to give defendant's instruction No. 3.
*697 Though this record discloses that the prosecutrix was not over the age of sixteen years prescribed by Code, 61-2-15, for the crime of statutory rape, the defendant and his companion were jointly indicted under Code, 61-2-15, for carnally knowing the prosecutrix, not the wife of either of the defendants, against her will and by force; and defendant's companion having been tried and convicted on the offense charged as the principal in the first degree, the defendant, as heretofore stated, was tried separately and convicted of attempted rape, which is a felony punishable under Code, 61-11-8, by confinement in the penitentiary for a term of not less than one nor more than five years. See State v. Tippens and Medley, 91 W.Va. 504, 113 S.E. 751. So the defendant, together with his companion, having been indicted for rape of the prosecutrix by force and against her will, the question whether prosecutrix consented to the intercourse enters into this case, as in all cases involving forcible rape of a woman over sixteen years of age.
The evidence portrayed by this record, bearing on the factual question whether the defendant held prosecutrix's ankles while his companion forcibly and against her will had sexual intercourse with the prosecutrix, is in direct conflict. That being so, it was clearly the province of the jury to find that defendant's companion raped prosecutrix forcibly and against her will, and that defendant aided and abetted in the criminal act by holding prosecutrix's ankles. If the jury had so found, the defendant would have been guilty as principal in the second degree. Pt. 1 syl., State v. Wamsley, 109 W.Va. 570, 156 S.E. 75. And under Code, 61-11-6 would "be punishable as if he were the principal in the first degree".
This gives rise to the question whether the defendant, who was indicted and tried for the crime of rape by force, can be convicted for attempted rape solely on evidence which shows that if defendant had participated in the crime charged, he did so as principal in the second degree. Two things are necessary to sustain a conviction for attempted rape: First, the present intent to commit the crime, and, second, an overt act in furtherance of such intent. In point 1 syllabus, State v. Gill, 101 W.Va. 242, 132 S.E. 490, this Court held: "To sustain a conviction for attempted rape, two things must be proven beyond a reasonable doubtthe specific intent to at once accomplish the crime, and an overt act in pursuance of such intent." See also State v. Hager, 50 W.Va. 370, 40 S.E. 393. And further under Code, 61-11-8, an attempt to commit a crime also embraces the failure in, or the prevention of, its commission. This section provides in part that: "Every person who attempts to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished as follows: If the offense attempted be punishable with death, the person making such attempt shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than five years." (Italics supplied.)
This record contains no probative evidence from which the jury could have found beyond a reasonable doubt that the defendant, as principal, either in the first degree or in the second degree, with the intent to commit the crime of rape on the prosecutrix, committed an overt act leading toward the commission of the offense, which offense he failed to commit, or was prevented from committing.
Clearly this record specifically shows that, if defendant was guilty of any crime at all, it was that of actually committing the crime of rape as principal in the second degree. Can the instant conviction for attempted rape, nevertheless, be sustained by this Court? The answer to this question cannot be found specifically in the cases decided by this Court.
It is well settled in this jurisdiction that one who acts as the principal in the first degree in the commission of rape, may, under an indictment charging him with rape, and on evidence sufficient to warrant a conviction of rape, be convicted of an attempt to commit rape, though there is no evidence specifically tending to show that the accused made an attempt to commit the *698 crime of rape, which he failed to commit or was prevented from committing. State v. Collins, 108 W.Va. 98, 150 S.E. 369. In State v. Gill, 101 W.Va. 242, 132 S.E. 490, the Court, in reversing a conviction of attempted rape on the ground of insufficient evidence, inferentially held that a defendant may be convicted of attempted rape, though the indictment charges the crime of rape. In the Gill case, though the opinion shows that the defendant was convicted of attempted rape, recourse to the printed record, contained in Vol. 101-M, Supreme Court Records and Briefs, discloses that the defendant Gill was charged with having committed statutory rape on a female child under the age of sixteen.
In cases arising in other jurisdictions it has been held that an accused charged in an indictment with the crime of rape may be convicted of an attempt to commit rape on evidence which shows that, if the accused is guilty at all, his guilt is that of principal in the first degree. State v. Griffin, 161 Kan. 90, 166 P.2d 580; State v. Harris, 101 Kan. 187, 165 P. 667; State v. Guthridge, 88 Kan. 846, 129 P. 1143; Powell v. Commonwealth, 179 Va. 703, 20 S.E.2d 536; Jordan v. Commonwealth, 181 Va. 490, 25 S.E.2d 249; Hart v. Commonwealth, 131 Va. 726, 109 S.E. 582; State v. Miner, 263 Mo. 270, 172 S.W. 366. The decisions in neither the Collins nor the Gill cases, nor in the above-cited cases from other jurisdictions, serve to answer the question immediately before us, that is, whether a defendant charged with rape can be convicted of the crime of attempt to commit rape on evidence which shows that if defendant participated in the crime, it was in aiding and abetting the principal perpetrator thereof and not otherwise.
As the only evidence in this case bearing directly on defendant's guilt is that he aided and abetted his companion, who was at a former and separate trial tried and convicted as the principal perpetrator of the crime, he acted as principal in the second degree, a status well known to the common law: "A man may be principal in an offence in two degrees. * * * in the second degree, he who is present, aiding and abetting the fact to be done." Blackstone's Commentaries on the Laws of England, Book IV, Chapter III, page 34, II Cooley's Blackstone, 4th ed. 1238. Thus Code, 61-11-6, is in the main a declaration of the common law, and is applicable to the crime for which defendant was indicted. Section 6 provides: "In the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree; * * *." And because the crime of rape is punishable with death or life imprisonment, in the absence of a recommendation of mercy in a jury verdict, defendant was convicted of a felony under Code, 61-11-8, which provides that: "Every person who attempts to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished as follows: If the offense attempted be punishable with death, the person making such attempt shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than five years."
It is interesting to note that Code, 61-11-8, the statute which generally provides for attempts to commit offenses, the classifications thereof, and penalties therefor, is somewhat similar to the Virginia statute, which provides for the penalties for attempts to commit offenses, Code of Virginia, 1950, Vol. 4, Title 18, Section 18-8, except that the Virginia statute in designating what constitutes an attempt provides that: "Every person who attempts to commit an offense, and in such attempt does any act towards its commission, shall, when not otherwise provided, be punished as follows: * * *." But it does not provide, as does Code, 61-11-8, that: "Every person who attempt to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished as follows: * * *." (Italics supplied.) From the italicized words in this quotation from the statute it would seem by the very statute itself that a constituent element of an attempt to commit a crime is the failure or the prevention of the attempt. Notwithstanding *699 the lack in the Virginia statute of the strong language contained in our statute, the Supreme Court of Appeals of Virginia in Thacker v. Commonwealth, 134 Va. 767, 114 S.E. 504, 505, held that: "An attempt to commit a crime is composed of two elements: (1) The attempt to commit it; and (2) a direct, ineffectual act done towards its commission" (italics supplied); and in West v. Commonwealth, 156 Va. 975, 157 S.E. 538, 539, the Virginia Court held that where a crime has been actually consummated, there can be no prosecution for an attempt to commit the crime, and specifically, the Court held that: "The failure to consummate a crime is as much an element of an attempt to commit it as the intent and the performance of an overt act towards its commission." In Granberry v. Commonwealth, 184 Va. 674, 36 S.E.2d 547, 548, involving a prosecution for attempted rape, the Virginia Court defined an attempt to commit an offense as: "The indictable offense for an attempt to commit a crime consists of an intent to commit a felony and the doing of some direct act towards its consummation without actually committing the crime itself." (Italics supplied.)
But in Cates v. Commonwealth, 111 Va. 837, 69 S.E. 520, 521, 44 L.R.A.,N.S., 1047, involving a prosecution on an indictment charging rape, in which on the first trial on an indictment charging rape, the defendant was convicted of an attempt to commit rape, and on the second trial the defendant was tried for rape on the same indictment and found guilty of rape, the Supreme Court of Appeals of Virginia, though defining an attempt to commit a crime as the "intention to commit a felony, and the doing of some act toward its commission, without actually committing it, is an attempt", held, as an attempt to commit rape is included in the charge of rape, the conviction of the attempt in the first trial was an acquittal of the major offense charged. At the time the Cates case was decided, both the Virginia statute, Michie's Code of Virginia, 1942, Section 4922, and the pertinent West Virginia Statute, Code, 62-3-18, provided that on an indictment for a felony, accused may be convicted of an attempt and a general verdict of not guilty shall be a bar to a subsequent prosecution for an attempt to commit such felony. And Michie's Code of Virginia of 1942, Section 4918, like West Virginia Code, 62-3-14, provided that "when accused" is "convicted of part of the offense charged, he shall be sentenced for such part as he is so convicted of, if the same be substantially charged in the indictment, whether it be felony or misdemeanor", but Section 4918 further provided that on a new trial the accused shall not be tried for any higher offense than that of which he was convicted on the last trial.
For a concise and clear statement of the principles enunciated by the Supreme Court of Appeals of Virginia, see generally 2 M.J., Attempts and Solicitation, Sections 3, 4, and 5. Though in point 2 of the syllabus in State v. Tomblin, 124 W.Va. 264, 20 S.E.2d 122, this Court held: "Intention to commit the crime of rape may be shown by circumstantial evidence", the Court there was dealing largely with the necessity in a prosecution for an attempt to commit rape to establish that the defendant entertained the intent to commit the crime.
In the decision of this case we are of opinion that we need not apply the ruling of the Court in the case of State v. Collins, 108 W.Va. 98, 150 S.E. 369, though the broad wording of point 2 of the syllabus of that case, considered as an abstract statement of law, would justify us in so doing. Point 2 of the syllabus reads: "On a conviction for an attempt to commit rape, this court will not set aside the verdict on the ground that there was no evidence to support it, if there was sufficient evidence to warrant a conviction of rape."
In the Collins case, the evidence conflicted on the question whether the defendant actually committed the physical act of statutory rape on the prosecutrix; and this Court simply held that embraced in the evidence tending to establish defendant's actual and physical raping of prosecutrix, there was the minor offense of the attempt to commit the crime of rape. That was the actual holding of this Court in the *700 Collins case, though syllabus 2 held, in effect, that, on an indictment charging rape, a conviction for an attempt to commit rape will not be disturbed on the ground that there was no evidence to support it, "if there [is] sufficient evidence to warrant a conviction of rape." As the evidence in the Collins case showed that if rape had been committed, the defendant was the sole actor in the consummation of the crime, point 2 of the syllabus in the Collins case is broader than is required for a decision of the case, and the holding of this Court, as disclosed by the opinion and the facts contained therein.
Much has been said on the question whether the syllabus or the opinion, or both, represent the law of a case decided by this Court. In Koblegard v. Hale, 60 W.Va. 37, 53 S.E. 793, 794, 116 Am.St.Rep. 868, this Court refused to apply the language of the syllabus in the case of Medford v. Levy, 31 W.Va. 649, 8 S.E. 302, 2 L.R.A. 368, saying: "The syllabus of the case must, of course, be read in the light of the opinion." Likewise in Jones v. Jones, 133 W.Va. 306, 58 S.E.2d 857, this Court explained point 1 of the syllabus of Hereford v. Meek, 132 W.Va. 373, 52 S.E.2d 740, stating in the opinion at page 310 of 133 W.Va., at page 859 of 58 S.E.2d that: "We have said that the statement contained in a syllabus is to be read in the light of the opinion. Koblegard v. Hale, 60 W.Va. 37, 41, 53 S.E. 793."
In Koonce v. Doolittle, 48 W.Va. 592, 597, 37 S.E. 644, 645, this Court said: "This court only makes the more important points of law a part of the syllabus for the general information of the legal profession and public". For an illuminating and learned discussion of the function of the syllabus of a case decided by this Court, see "The LawIn West Virginia", by Thomas P. Hardman, Dean of the College of Law of West Virginia University, 47 W.Va.L.Q. 23, and note by Dean Hardman, 47 W.Va.L.Q. 209. And though Judge Brannon by obiter dictum in Citizens' National Bank v. Burdette, 61 W.Va. 636, 57 S.E. 53, 54, observed: "Now, our Constitution requires the court to make the syllabus, and it is that which is the real decision over the opinion", we, following the holding of this Court in the Koblegard and Hereford cases, read point 2 of the syllabus in the Collins case in the light of the opinion and the facts contained in that opinion, and note that the decision in that case is not decisive of the exact question now under consideration.
From the opinion in the Collins case it appears that the Court reached its decision and arrived at the postulate contained in point 2 of the syllabus on the basis that the crime of an attempt to commit rape is an offense minor to, and included in, the major crime for which the defendant was indicted, namely, the rape of the prosecutrix, who was under the age of consent. The Court cited State v. Prater, 52 W.Va. 132, 43 S.E. 230, as a case "directly in point", in which the Court sustained a conviction for manslaughter of a defendant who acted as a principal in the second degree, though the defendant was indicted for murder; and the case of Cates v. Commonwealth, supra, in which defendant, having been indicted and tried for rape on the first trial was found guilty of attempt to commit rape, and, a new trial having been granted, the defendant was tried for rape and found guilty thereof. The Supreme Court of Appeals of Virginia in the latter case reversed the judgment of conviction, set aside the verdict of the jury, and, on the ground that the offense of an attempt to commit rape is included in the crime of rape, remanded the case for a retrial of the defendant for the crime of an attempt to commit rape.
The Court in the Collins case based its decision to a large extent on Chapter 159, Section 22, Barnes' Code, 1923, now Code, 62-3-18, which reads: "On an indictment for felony, the jury may find the accused not guilty of the felony, but guilty of an attempt to commit such felony; and a general verdict of not guilty upon such indictment shall be a bar to a subsequent prosecution for an attempt to commit such felony."
*701 This statute, however, draws no distinction as between a defendant who is a principal in the first degree and one who, as here, acted as a principal in the second degree; and it does not expressly provide whether the conviction for an attempt to commit a crime may be sustained where there is no probative evidence specifically tending to show that the accused made an ineffectual effort to commit rape, accompanied by the necessary intent and overt act.
It seems to be well established in the Virginias that under West Virginia Code, 62-3-18, and the identical Virginia statute, Virginia Code of 1942, Anno., Chapter 195, Section 4922, a conviction for an attempt to commit the crime charged in the indictment will be sustained, where the defendant is the principal in the first degree, as was the case of the defendant in the Collins case. State v. Meadows, 18 W.Va. 658; State v. Gill, 101 W.Va. 242, 132 S.E. 490; State v. Collins, supra; Givens v. Commonwealth, 29 Grat. 830, 70 Va. 830; Mings v. Commonwealth, 85 Va. 638, 8 S.E. 474; Glover v. Commonwealth, 86 Va. 382, 10 S.E. 420; Cates v. Commonwealth, supra.
Though State v. Prater, supra, is cited in the opinion in the Collins case as being "directly in point" with that case, it is clearly inapplicable to the case at bar. The only similarity between the Prater case and the instant case is that the State in each case introduced evidence in an endeavor to convict the defendant on the theory that he was present and acting as principal in the second degree at the time the alleged crime was committed. In the instant case the only evidence upon which the conviction of the defendant was based tends to show that defendant was present at the time of the alleged rape, aiding and abetting the principal perpetrator, and, therefore, was acting as a principal in the second degree. However, the two cases are radically different and clearly distinguishable in that in the Prater case the defendant was indicted for murder and convicted of voluntary manslaughter, while in the instant case the defendant was indicted jointly with his companion for forcible rape, and was convicted of an attempt to commit the crime of rape upon the prosecutrix.
The Prater case, though the State in that case sought to convict the defendant of murder as principal in the second degree, is not in point with the case at bar. We say this because the indictment charging murder of the first degree embraces within the charge of murder, four kinds of criminal homicide: (1) Murder of the first degree; (2) murder of the second degree; (3) voluntary manslaughter; and (4) involuntary manslaughter. Bowlby's Wharton on the Law of Homicide, 3d ed., Chapter I; Blackstone's Commentaries on the Laws of England, Chapter XIV, 191, II Cooley's Blackstone, 4th ed., 1347. The West Virginia statute, Code, 61-2, which deals with criminal homicide, does not by definition draw a distinction between murder and manslaughter. It does, however, divide murder into two classes: (1) Murder with the deliberate intent to take the life of another, being murder of the first degree; and (2) murder without such deliberate intent to take the life of another, being murder of the second degree. State v. Dodds, 54 W.Va. 289, 298, 46 S.E. 228. Thus, in a prosecution under an indictment charging murder of the first degree, the jury may, upon probative evidence, find the defendant guilty of any one of the four kinds of criminal homicide; and, if the defendant so requests, the jury should be instructed as to the verdicts it may render, including the verdict of not guilty. State v. Whitt, 96 W.Va. 268, 122 S.E. 742; State v. Cline, 100 W.Va. 57, 130 S.E. 91; State v. Foley, 128 W.Va. 166, 35 S.E.2d 854; State v. Zannino, 129 W.Va. 775, 41 S.E.2d 641; State v. Toler, 129 W.Va. 575, 41 S.E.2d 850.
The decisions of this Court in the Prater and Collins cases were based upon the postulate that, as there was sufficient evidence in the Prater case from which the jury could find the defendant guilty of the offense charged in the indictment, namely, murder, and as there was sufficient evidence in the Collins case from which the jury could find the defendant guilty of the offense of statutory rape, a conviction for *702 the lesser offenses, that is, for voluntary manslaughter in the Prater case and attempt to commit rape in the Collins case, were upheld.
Code, 61-2, though it states in detail what is murder of the first degree, and provides that: "All other murder is murder of the second degree", it did not alter the common law definition of murder of the first degree. To constitute murder of the first degree, the crime for which Prater was indicted, the homicide must be unlawful, premeditated, intentional, and deliberate. To constitute the crime of voluntary manslaughter, the homicide for which Prater was convicted, it must be unlawful and intentional, but in such heat of blood as to preclude malice. So the crime of voluntary manslaughter embraces two elements: unlawfulness and criminal intent, which are component parts of murder of the first degree, with which Prater was charged in the indictment. That the State sought to convict the defendant in the Prater case of murder of the second degree is of no moment.
Judge Kenna severely criticized the decision of the Court in the Prater case in a dissenting opinion in Moore v. Lowe, 116 W.Va. 165, 180 S.E. 1, 4, in which this Court held that an indictment for accessory before the fact of murder will sustain a conviction of voluntary manslaughter. However, as the opinion in the Moore case does not disclose whether in the criminal prosecution in which Moore, the relator in Moore v. Lowe, supra, was convicted of manslaughter, there was evidence specifically showing that Moore was present and acted as a principal in the alleged unlawful killing, the Moore case throws no light on the instant case. In the dissenting opinion in the Moore case Judge Kenna said that by the statement in the Court's opinion in the Prater case that: "`Logic is utterly powerless to extract the verdict from its inconsistencies.' The court, in effect, simply said that the accused could not be heard to complain, since the proof showed him guilty of murder. Hence, it is seen that the case did not turn in the least upon the question of error, that having been admitted, but that it was decided upon the proposition that there was no prejudice. * * * The Prater Case itself is open to question * * *, because the lack of prejudice upon which the decision turns is based upon the assumption that the jury should have found the defendant guilty of a higher crime. Of that higher crime the jury had acquitted him; and the effect of the case is to punish the defendant upon the court's own conclusion from the evidence that a jury had passed upon." See note in same tenor, reviewing Moore v. Lowe, supra, 42 W.Va.L.Q. 67.
However, if, as the Supreme Court of Appeals of Virginia in West v. Commonwealth, 156 Va. 975, 157 S.E. 538, held that the failure to consummate a crime is an element of an attempt to commit it as much as the performance of an overt act during the commission of the crime, point 2 of the syllabus of the Collins case presents a contradiction, and the holding of this Court in that case factually makes this Court an arbiter of the sufficiency of the evidence to sustain a conviction of rape. Nevertheless, we are committed to the holding in the Collins case, but, as heretofore indicated, that case is to be distinguished from the instant case.
In State v. Digman, 121 W.Va. 499, 5 S.E.2d 113, in which the defendant was found guilty of rape as principal in the second degree to the crime of rape, this Court at page 501 of 121 W.Va., at page 114 of 5 S.E.2d of the opinion stated: "Under the State's proof, there could be a proper conviction of but one offense principal in the second degree to the crime of rape. Any other finding would constitute error, requiring the trial court to set the verdict aside"; and "There being evidence to sustain a conviction of but one of the offenses charged, there was no room for an election."
The case at bar involves a principal who, under the evidence, if he acted at all in a criminal way, aided and abetted the principal perpetrator of the crime. Under the evidence in this case, the jury should have found the defendant guilty of rape as principal *703 in the second degree or not guilty. In order for an attempt or any other lesser crime to be included in the greater crime, the lesser crime must "`be such that it is impossible to commit the greater without first having committed the lesser.'" Giles v. United States, 9 Cir., 144 F.2d 860, 861; United States v. Barbeau, D.C., 92 F.Supp. 196; Barbeau v. United States, 9 Cir., 193 F.2d 945.
In the Prater case, as we have suggested, the crime of voluntary manslaughter is necessarily included in the crime of murder. In the Collins case, in which there was substantial evidence showing that if the defendant Collins was guilty at all, it was on the basis that he committed the physical act of statutory rape on the prosecutrix in that case, and, therefore, under the holding of this Court in point 2 of the syllabus of the Collins case, the crime of attempt to commit rape is necessarily included in the major crime of statutory rape charged in the instant case. But in the instant case the crime of an attempt to commit rape, in our opinion, is not necessarily included in aiding and abetting another to commit rape, as distinguished from the actual physical act of rape. The evidence in this case shows that if defendant acted at all in a criminal way, he did so in aiding and abetting another to perpetrate the physical act of rape and not otherwise. If defendant had been found guilty by the jury of aiding and abetting in the perpetration of the crime, his conviction would be on the theory that he had acquired by his actions the common law status of a principal in the second degree, and, under Code, 61-11-6, if so found guilty, he would have been "punishable as if he were the principal in the first degree; * * *." Section 6, however, does not deal with crime itself; nor does it provide that one who acts as a principal in the second degree, or an accessory before the fact, in the commission of a crime shall be guilty of a crime: it simply provides that one who acts in the capacity of, and by his actions has acquired the status of, a principal in the second degree or an accessory before the fact in the commission of a felony, shall be punishable as if he did the physical act of committing the felony, that is, he shall be punishable as if he were the principal in the first degree. This Court in State v. Wamsley, supra, in point 1 syllabus has recognized that the crime of rape, the principal crime charged in the instant indictment "from its nature could in fact have been committed by but one"; nevertheless, "those who are present, aiding and abetting its commission, being principals of the second degree, and indictable and punishable, under our Code [Barnes' Code, 1923, Chapter 152, Section 6, now Code, 61-11-6] and practice, as principals of the first degree." In the opinion at page 574 of 109 W.Va., at page 77 of 156 S.E. in the Wamsley case this Court, in referring to what is now Code, 61-11-6, said: "Our statute makes provision for the punishment of the principal of the second degree the same as if he were principal in the first degree." The evident contradiction contained in the decision of this Court in State v. Prater, supra, and expressly recognized by the Court in the opinion in that case, and the contradiction contained in the broad language embraced in point 2 of the syllabus of the Collins case, namely, that though the jury may have found that the defendant was not guilty of the major crime charged in the indictment, if the evidence in the case warrants such conviction, the conviction for the minor crime, that is, manslaughter in the Prater case and an attempt to commit rape in the instant case, will, nevertheless, be sustained, should, in our opinion, not be carried on in the decision of the instant case. For us to do so would require a holding that the defendant who, the evidence shows, has acted only as a principal in the second degree in the commission of the crime of rape, notwithstanding the jury has inferentially found him not guilty of the major crime of rape charged in the indictment, may, nevertheless, be convicted of an attempt to commit rape, in the absence of evidence showing, or tending to show, that the defendant made an effort, accompanied by the necessary intent and overt act, to commit the crime of rape, which the defendant failed to commit or was prevented from committing.
*704 As the defendant in the case at bar was convicted of an attempt to commit rape and not of the commission of the crime of rape itself, as charged in the indictment, such conviction bars a prosecution on a new trial under State v. Gill, supra, for a crime higher than that of an attempt to commit rape. See also State v. Foley, supra.
We perceive no error in the trial court's refusal to admit in evidence the testimony of a witness at whose home prosecutrix was staying, to the effect that prosecutrix was impatient of restraint and angered because she could not go out at night as often as she wanted to; that she called her employer an obscene name; and that she stole personal property belonging to the witness at the time she left the witness's home. And the testimony of another witness that on or about October 1, 1951, prosecutrix came to his house to care for his children, and before leaving his home a search of her baggage revealed that she had in her possession a number of articles belonging to the witness. This testimony was properly refused by the trial court because it concerned prosecutrix's character for honesty, and not her character for chastity, and concerned events which occurred after the time of the alleged rape.
Nor do we think that the testimony refused by the court and avowed by counsel for defendant to the effect that while prosecutrix was working at a restaurant in the City of Charleston, she told witness that she was a widow; and while so employed she was wont to talk and "visit with" every man who came into the place, constitutes error. This testimony has no probative force as bearing on prosecutrix's character for chastity.
However, because defendant was indicted and convicted on the theory that he committed rape upon prosecutrix with force and against her will, not only is the question whether she consented to have intercourse with defendant material, but evidence bearing upon prosecutrix's character for chastity is relevant on the issue whether prosecutrix consented, and was admissible to show that she probably gave her consent to the alleged intercourse. 1 Wigmore on Evidence, 2d ed., Section 200. That, in a prosecution for rape the reputation of the prosecutrix as to her chastity prior to the alleged crime is admissible, see State v. Barrick, 60 W.Va. 576, 55 S.E. 652; State v. Bruzzino, 65 W.Va. 628, 64 S.E. 1025; and in this jurisdiction specific acts of prior illicit sexual intercourse may be shown, when coupled with the accusation of the paternity of an illegitimate child born as the result of the rape. State v. Martin, 102 W.Va. 107, 134 S.E. 599. In State v. Graham, 119 W.Va. 85, 191 S.E. 884, in which the physician, who had examined prosecutrix on the day following the alleged rape, testified that he could not say whether the recent sexual intercourse which his examination of prosecutrix disclosed, was her first act of intercourse, the defendant was permitted to introduce the testimony of a witness who on one occasion said he saw his brother in bed with prosecutrix, and on another occasion, more than a year prior thereto, he had slept with prosecutrix and had sexual relations with her. This testimony, however, was introduced in contradiction of prosecutrix's testimony to the effect that she had never had sexual intercourse before the occasion of the alleged rape.
For a detailed and scholarly discussion of the question, much controverted in the decisions of the courts of this country, bearing on the admissibility of evidence concerning character for chastity of a prosecutrix in a prosecution for rape, see 1 Wigmore on Evidence, Third Edition, Section 200; and especially the quoted excerpts from the judicial opinions in the cases of People v. Abbot, 19 Wend., N. Y. 192, 194; People v. Jackson, 3 Parker, Cr.R. 391, 398; Rice v. State, 35 Fla. 236, 17 So. 286; and Mr. Justice Cardozo's observation in "The Nature of the Judicial Process", page 156, to the effect that the defendant in a prosecution for rape "may not show specific, even though repeated, acts of unchastity with another man or other men. * * * Undoubtedly, a judge should exercise a certain discretion in the admission of such evidence, *705 should exclude it if it is too remote, and should be prompt by granting a continuance or otherwise to obviate any hardship resulting from surprise [to the prosecutrix.] That is not the effect of the present rule. The evidence is excluded altogether and always."
This record, however, does not concern the admissibility of evidence bearing on prior acts of unchastity by prosecutrix with a man or men other than defendant and his companion. The question here is whether in this case, in which the question of prosecutrix's consent is material, the trial court committed prejudicial error in refusing to admit the testimony proffered by defendant and avowed on the record that prosecutrix and her companion came to live at the witness's house about September 1, 1951; that prosecutrix was wont to stay out late at night; and that on one occasion, when prosecutrix and her companion returned to the house about three o'clock in the morning, the witness asked prosecutrix and her companion to leave; and the testimony of defendant's witness, Delbert Rouse, a member of the Police Department of the City of Charleston, which was refused by the trial court and avowed in the record, that on one occasion, while he was on official duty on Summers Street in the City of Charleston, he accosted prosecutrix and directed her to go home, because she was scantily dressed, wearing on that occasion "a little thing around her breasts and short pants on." This testimony, offered by the defendant and refused by the court, may have only slight probative force, but it bears directly upon the question of prosecutrix's character for chastity prior to the time of the alleged rape; and in view of the direct conflict in the evidence on the question whether prosecutrix consented to have intercourse with defendant's witness Jarrett, or whether the act was consummated with force and against prosecutrix's will with defendant aiding and abetting the alleged principal actor. In State v. Kittle, 85 W.Va. 116, pt. 1 syl., 101 S.E. 70, a case involving a prosecutrix who was a prostitute and had received the embraces of other men promiscuously, this Court held: "In a prosecution for rape where the defendant admits having illicit connection with the prosecutrix, but swears she consented, evidence of her previous character for unchastity is material upon the principal issue." In Niblack's Underhill's Criminal Evidence, 4th ed., Section 676, it is stated: "Though evidence of adulterous acts with other men is not generally admissible, evidence of other acts indicating the possession of an immoral character is relevant. Evidence of drunkenness and dissipation, of the keeping of late hours and of streetwalking on the part of prosecutrix will always be received." (Italics supplied.) See generally cases cited in the footnote to the text, State v. Ulmer, 37 N.M. 222, 20 P.2d 934; Brennan v. People, 7 Hun., N.Y., 171; Cloninger v. State, 91 Tex.Cr.R. 143, 237 S.W. 288; and Nash v. State, 103 Tex.Cr.R. 633, 281 S.W. 1052.
The trial court did not err in refusing to give defendant's instruction No. 3, which, inter alia, instructed the jury that the result or proceedings in State v. Jarrett, the case in which defendant's companion was tried and convicted, should carry no weight in the determination of the instant case; and that the jury should confine its deliberations "solely to the law and the evidence in this case and no other." This instruction correctly instructed the jury to confine its deliberations solely to the case at bar without any consideration of the result in the Jarrett case, and if the instruction had been the only one offered and given bearing on the immediate subject matter, its refusal would have been prejudicial error. But defendant's instruction No. 3, in our opinion, is fully covered by defendant's instruction No. 2-A, which, among other things, informed the jury that even though the jury may believe from the evidence beyond all reasonable doubt that defendant's companion committed the offense of rape on the prosecutrix, it cannot find defendant guilty from this fact alone, "and unless the jury further believe from the evidence in this case, beyond all reasonable doubt, that Paul LeRoy Franklin knew of the intent of William Ray Jarrett to commit the said *706 act of rape and shared in said intent, and while so knowing and sharing in said intent * * * aided, abetted, and assisted the said Jarrett in the commission of said act of rape, then you should find the defendant, Paul LeRoy Franklin, not guilty." The duplication of instructions is unnecessary and undesirable and "Therefore, it is not error to refuse to instruct on a point already sufficiently covered by other correct instruction given in the case, * * *". 10 M.J., Instructions, Section 41. State v. Painter, 135 W.Va. 106, 63 S.E.2d 86; Doss v. City of Mullens, 133 W.Va. 351, 56 S.E.2d 97; Burdick v. City of Huntington, 133 W.Va. 724, 57 S.E.2d 885; Somerville v. Dellosa, 133 W.Va. 435, 56 S.E.2d 756.
To defendant's petition for a writ of error, defendant's counsel have attached the affidavit of prosecutrix, dated May 23, 1953, in which affiant states that she is the prosecuting witness in the cases of State of West Virginia against William Jarrett and State of West Virginia against Paul Franklin; and that during the Jarrett trial and the trial in the case at bar she made certain false statements in her testimony. The affidavit further states that affiant willingly submitted to sexual intercourse with William Jarrett on the day the alleged rape occurred, the date of which is erroneously stated in the affidavit to be "October" 15, 1951; and that contrary to the testimony which she gave at the two trials, "the true fact" is that there was no force applied by Jarrett or the defendant Franklin; and that this act of sexual intercourse was not the first sexual intercourse in which affiant had engaged. This affidavit is not properly in the record in this case, and was not considered by this Court in the decision in this case. This Court will not consider upon writ of error or appeal papers not made a part of the record in the trial court, and therefore not considered by the trial court. 1 M.J., Appeal and Error, Section 183. This rule is applicable to papers contained in the printed record, but never formally made a part of it. Nolan v. Guardian Coal and Oil Company, 119 W.Va. 545, 546, 194 S.E. 347; Mustain v. Pannill, Ex'r, 86 Va. 33, 9 S.E. 419.
For the foregoing reasons the judgments of the Circuit and Intermediate Courts of Kanawha County are reversed, the verdicts set aside, a new trial awarded, and the case remanded to the Intermediate Court of Kanawha County.
Judgments reversed; verdict set aside; new trial awarded.
LOVINS, Judge (dissenting).
I think that the Court's opinion in this case is unsound and contrary to prior decisions of this Court. Therefore, I dissent.
In my view, only two questions are presented by the record herein: (a) Is the verdict of the jury valid, considering the indictment and the proof in support thereof, (b) Did the Intermediate Court of Kanawha County err in refusing to admit the evidence adduced by the defendant to show the likelihood of consent to sexual intercourse by the prosecutrix. The other and numerous points of the syllabus prefixed to the written opinion embodies principles which are argumentative and corollary to the two decisive questions. Therefore, I shall only discuss those questions.
The distinction set forth in the Court's opinion between the instant case and the cases of State v. Collins, 108 W.Va. 98, 150 S.E. 369; State v. Prater, 52 W.Va. 132, 43 S.E. 230, in my opinion are nonexistent. Of course, the facts in State v. Collins, supra, and State v. Prater, supra, are not exactly precisely similar to the facts in the instant case. A moment's consideration will disclose that in all human affairs, recurring factual situations as well as the objects of nature, are not precisely alike. Diversity and not uniformity is the rule.
The underlying principle enunciated in the cases of State v. Prater, supra, and State v. Collins, supra, is: If a defendant is charged with a crime and the proof sustains *707 the charge, that notwithstanding such situation, the person may be convicted of a lower offense. In the Collins case, the defendant was charged with statutory rape. The proof tended to show the commission of rape. Nevertheless, the jury found the defendant guilty of attempt to commit rape. But, the court upheld the conviction and sentence. It was contended in the Collins case as is held in the instant case, that the evidence undeniably was sufficient to show the consummation of the crime, treating the evidence adduced by the state as true; that there was no testimony to establish an attempt to commit the rape. This Court rejected that contention in the language found in the body of the opinion. "If we upheld the contention of the defendant here that the verdict could not be sustained because of want of evidence to support it, the same rule applied on another trial would lead inevitably to his discharge from further prosecution under the indictment. Justice would be mocked by such a holding." [108 W.Va. 98, 150 S.E. 370.] I apply the same comment to the holding of the Court in the instant case. The defendant has been acquitted of the principal crime of rape and the evidence is now said to be insufficient to establish the crime of attempted rape. Justice is mocked. In the Collins case, the Court cites for its authority the case of State v. Prater, supra. In the Prater case [52 W.Va. 132, 43 S.E. 234], Judge Poffenbarger uses the following language: "They [the jury] illegally acquit and discharge the accused as to the higher degrees of crime charged in the indictment, after having found the [defendant] guilty. They have not exceeded the law, but stopped short of the law and of their duties. In other words, without warrant of law or moral right, they have exercised clemency, and dispensed what they conceived to be mercy." In the Collins case, the Court uses the following language: "So we may conclude, in accord with both law and reason, that the defendant here cannot complain that the jury found him guilty of an attempt to commit the offense, * * *." The comment made by Judge Wood in State v. Collins, supra, applied forcibly to the instant case.
We have another instance in which this Court upheld a verdict in similar circumstances. It was held in the case of Moore v. Lowe, 116 W.Va. 165, 180 S.E. 1 that: "An indictment for accessory before the fact to murder will sustain a conviction of voluntary manslaughter."
It is true that in order that a conviction for attempted rape be sustained, it must be proved beyond a reasonable doubt the specific intent to at once accomplish the crime and an overt act in pursuance of such intent. State v. Gill, 101 W.Va. 242, 132 S.E. 490. What more can be shown than was shown in the instant case? If the testimony of the prosecutrix be true, the overt act of defendant consisted of his holding her ankles while the rape was consummated, and in intercepting her when she tried to escape from the lustful embraces of defendant's companion. Defendant having done such overt acts, I cannot avoid the conclusion that he had an intent to aid and abet in the commission of the crime.
The statute adverted to in the case of State v. Collins, supra, is the strongest kind of support for the validity of the verdict. The statute reads as follows: "On an indictment for felony, the jury may find the accused not guilty of the felony, but guilty of an attempt to commit such felony; and a general verdict of not guilty upon such indictment shall be a bar to a subsequent prosecution for an attempt to commit such felony." Code, 62-3-18. The legislative mandate contained in the above quoted statute certainly authorized the jury to find the defendant guilty of an attempt and the trial court to sentence the defendant on such finding. See Cates v. Commonwealth, 111 Va. 837, 69 S.E. 520, 44 L.R.A.,N.S., 1047.
In the case of State v. Digman, 121 W.Va. 499, 5 S.E.2d 113, the defendant had procured a colored man to commit the crime of rape upon the defendant's wife. This Court held in the third point of the *708 syllabus that: "A husband may be guilty as principal in the second degree of raping his wife under Code, 61-2-15." It is to be noted that Code, 61-11-6, providing for the punishment of principals in the second degree and accessories before and after the fact is entirely different from Code, 62-3-18, above quoted. Code, 61-11-6 provides for punishment. Code, 62-3-18 authorizes a jury to find the defendant guilty of an attempt, though charged with the commission of a greater offense.
The case of State v. Martin, 112 W.Va. 88, 163 S.E. 764 holds that, "Where, under an indictment charging two separate individuals with rape, one has been convicted of the crime charged, the other may be tried thereunder as a principal in the second degree, and, if convicted, punished as the principal felon." In State v. Martin, supra, the facts are very similar to the facts in the case at bar.
State v. Wamsley, 109 W.Va. 570, 156 S.E. 75, is authority sustaining the judgment and verdict in this case. As to overt act and attempt rape, see Preddy v. Commonwealth, 184 Va. 765, 36 S.E.2d 549; Glover v. Commonwealth, 86 Va. 382, 10 S.E. 420. An intent to commit rape may be shown by circumstantial evidence. State v. Tomblin, 124 W.Va. 264, 20 S.E. 2d 122. An indictment for rape includes the crime of attempted rape. State v. Collins, supra. See State v. Ferrand, 210 La. 394, 27 So.2d 174, 167 A.L.R. 559.
The conclusion cannot be avoided that the indictment was a valid charge and included the crime of attempted rape. The evidence, though fully sustaining the charge as to the principal offense of rape, is sufficient to support a verdict of an attempt to rape, and that the judgment pronounced thereon should not be set aside because the proof, though showing the commission of the crime of rape, does not sustain a verdict of guilty as to the lower offense. I think it is illogical to say that where an indictment charging a felony is sustained by proof, showing the commission of the greater crime, it fails to support a conviction of an attempt to commit that crime. Especially is this true under the provisions of Code, 62-3-18.
Coming to the question of the admissibility of evidence relating to the chastity of the prosecutrix proffered by the defendant. This Court in its opinion properly holds that evidence tending to show that the prosecutrix was guilty of larceny occurring after the commission of the crime of rape, that evidence tending to show that she was angered because she could not stay out late at night, and that prosecutrix was wont "to visit" with every man who came into her place of employment were properly rejected. These items of evidence relating to times subsequent to the rape were not relevant to the question of whether the prosecutrix was a virgin and of chaste character before the alleged rape.
But the Court holds that since the question of consent was involved, that acts occurring before the rape relative to the prosecutrix's reputation for sexual chastity were admissible. It is true that the cases of State v. Barrick, 60 W.Va. 576, 55 S.E. 652; State v. Bruzzino, 65 W.Va. 628, 64 S.E. 1025 are authorities standing for the principle that the prosecutrix's reputation for chastity, prior to the crime of rape, is admissible. State v. Martin, supra, and State v. Graham, 119 W.Va. 85, 191 S.E. 884 authorize the admission of evidence showing prior acts of illicit sexual intercourse on the part of the prosecutrix in certain circumstances. There is a substantial difference of opinion between judges and writers on the law of evidence, with respect to the admission of testimony of this kind.
Starting with the proposition however, that it is admissible in this jurisdiction and analyzing the acts of the prosecutrix as shown by avowals made in the instant case as tending to show unchastity on her part. Those acts concerned her conduct in staying away from her room until a late hour at night; that she was asked to leave her lodging because of such conduct; and that a policeman who saw the prosecutrix on a public street in the City of Charleston *709 admonished her to go home because of her scanty attire, the Court's opinion states: "This testimony, offered by the defendant and refused by the court, may have only slight probative force, but it bears directly upon the question of prosecutrix's character for chastity prior to the time of the alleged rape; * * *."
It is to be remembered that the prosecutrix was less than sixteen years of age, and that she came from a rural section in Lincoln County; that she did not have parental advice and supervision, and thus, her conduct, with reference to staying out late at night and wearing scant attire on a public street may be characterized, at its worst, as being indiscreet, but in opposition to this, we have the testimony of the physician who examined the prosecutrix a short time after the rape and who testified that she was a virgin.
It is a non sequitur to say that because the prosecutrix, unsupervised and unsophisticated as she undoubtedly was, was sexually unchaste because of her indiscreet conduct. I think that the evidence offered by the defendant to show that she had stayed out late at night and was scantily attired on a public street was irrelevant and that the trial court exercised proper discretion in excluding such evidence from the consideration of the jury.
I am authorized to say that Judge GIVEN joins in this dissenting opinion, with respect to the sufficiency of evidence sustaining the verdict, but he does not join in that part of the opinion which discusses the admissibility of evidence, and joined in the reversal on that ground alone.
I would affirm the judgments of the Intermediate and Circuit Courts of Kanawha County.