365 S.E.2d 395

**STATE of West Virginia**

v.

**Frank NEARY.**

**No. 17303.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1987.

Rehearing Denied Feb. 3, 1988.

---

**117**

J. Bradley Russell, Asst. Atty. Gen., for plaintiff.

Rudolph L. diTrapano, Rebecca A. Baitty, Charleston, for defendant.

MILLER, Justice:

Frank Neary, a member of the Putnam County Commission, was convicted of being or becoming pecuniarily interested in a contract over which he may have had some voice or influence, and of accepting a pecuniary benefit, a telephone access code card, for having voted on a county telephone contract. He was ordered to pay fines totaling $5,500 for the two misdemeanor convictions and was removed from office as required by statute. His motion for a judgment of acquittal or, in the alternative, for a new trial was denied, and upon appeal he assigns as error the sufficiency of the evidence as to both offenses, the sufficiency of the indictments, and the rulings of the trial court on a number of instructions.

I.

The defendant assumed office as a county commissioner on the Putnam County Commission in January, 1983, following the 1982 general election. Since 1972, he had been performing various maintenance services for the Kanawha Orchard Public Service District (PSD) located in Putnam County, including marking and repairing water lines and reading water meters. He was paid for these services by the PSD, which is a governmental entity authorized by the Putnam County Commission and regulated as a public utility by the West Virginia Public Service Commission. After assuming office in 1983, he continued to perform maintenance services for the PSD.

It was stipulated that in the year before his indictment, he made approximately $30,000 a year from this contract work. On September 4, 1985, he was indicted by a grand jury in Putnam County for having a pecuniary interest in a contract in violation of W.Va.Code, 61-10-15 (1977).[1]

The defendant contends that the evidence is, as a matter of law, insufficient to support a conviction under the statute because the State did not prove beyond a reasonable doubt that he had "any voice, influence, or control as a county commissioner over the ... PSD's contract with himself." The defendant argues there must be a connection between the official's action as a public official and his pecuniary interest in the proceeds of a contract or service. Merely having some possible voice, influence or control is not enough.

The State argues the law does not require the prosecution to show an actual exercise of influence, and that a violation of the conflict of interest statute can be proven by showing the public official be-

---

1. W.Va.Code, 61-10-15 (1977) provides, in relevant part:

"It shall be unlawful for any member of a county commission ... or any member of any other county or district board, or for any county or district officer to be or become pecuniarily interested, directly or indirectly, in the proceeds of any contract or service, or in furnishing any supplies in the contract for, or the awarding or letting of, which as such member, officer, secretary, supervisor, super- intendent, principal, or teacher, he may have any voice, influence or control.... Any person or officer named who shall violate any of the foregoing provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be imprisoned for a period not to exceed one year. In addition to the foregoing penalties, any such officer shall be removed from his office...."

came or remained interested in the proceeds of a contract or service in which, by virtue of his office, he may have any voice, influence or control.

The State points to the fact that the defendant nominated and voted for the PSD member who replaced his wife on the PSD. The defendant's wife had resigned when the defendant assumed his office on the county commission. The State also points to evidence which reveals that the defendant and another member of the Commission, over the objection of the remaining member, voted to remove all the members of another PSD, the Putnam Union Public Service District. The State argues that this was done under the Commission's statutory power to remove members of the PSD and would obviously indicate to the PSD commissioners the control exercised over them.[2]

In this same vein, the State argues that a county commissioner has the power to influence contractual transactions of a PSD by virtue of the broad powers county commissions have over public service districts under the provisions of W.Va.Code, 16–13A–1, et seq. This authority includes the power to create, enlarge or reduce the area of a public service district,[3] and to appoint[4] and remove[5] PSD members.

We believe the State's position is consistent with the intent of the legislature as reflected by the broad language of the statute and our precedents interpreting it. Although our decisions applying the statute have been rendered in the context of a removal proceeding, we believe they are nonetheless applicable in a criminal proceeding to determine the legislative intent

and purpose of the statute. There is little, if any, leeway present to construe the statute since, as stated in *Alexander v. Ritchie*, 132 W.Va. 865, 871, 53 S.E.2d 735, 739 (1949), "Code, 61–10–15, implements the public policy of this State, and its provisions are clear and unambiguous. Although harsh, its objects and purposes are salutary."

The misdemeanor offense created by W.Va.Code, 61–10–15, does not require a showing of criminal intent. *Alexander v. Ritchie*, 132 W.Va. at 872, 53 S.E.2d at 740; *Hunt v. Allen*, 131 W.Va. 627, 635, 53 S.E.2d 509, 514 (1948). *See also, Arbogast v. Shields*, 123 W.Va. 167, 14 S.E.2d 4 (1941). Commission of the prohibited act, here merely being pecuniarily interested in the proceeds of a contract over which one may have any voice, influence or control, constitutes a violation of the statute.

This Court has consistently recognized the broad purpose of the conflict of interest statute as is reflected in the following language of *Jordan v. McCourt*, 135 W.Va. 79, 86, 62 S.E.2d 555, 560 (1950):

"The public policy of this State, as evidenced by Code, 61–10–15, as amended, is not directed against actual fraud or collusion, but is for the purpose of preventing those acts and eliminating any opportunity therefor. As this Court said in *Alexander v. Ritchie*, [132 W.Va. 865, 871, 53 S.E.2d at 739 (1949)] ...: 'The purpose of the statute is to protect public funds, and give official recognition to the fact that a person cannot properly represent the public in transacting business with himself. To permit such conduct would open the door to fraud. The stat-

---

**2.** It appears that the removal of the Putnam Union Public Service District commissioners was later reversed by the Circuit Court of Putnam County.

**3.** W.Va.Code, 16–13A–2.

**4.** W.Va.Code, 16–13A–3.

**5.** W.Va.Code, 16–13A–3a provides:

"The county commission or any other appointive body creating or establishing a public service district under the provisions of this article may remove any member of the gov-

erning board thereof for consistent violations of any provisions of this article, for reasonable cause which includes, but is not limited to, a continued failure to attend meetings of the board, failure to diligently pursue the objectives for which the district was created or failure to perform any other duty prescribed by law or for any misconduct in office, or upon written petition signed by twenty-five percent of the registered voters who reside within the limits of such proposed public service district: Provided, that such appointee shall be removed only after a full hearing of any complaint presented against him and after a ten-day notice of such hearing."

ute is designed to remove from public officers any and all temptation for personal advantage.' "

See also, 63A Am.Jur.2d, *Public Officers and Employees* § 338 (1984).

The decision in *Fisher v. Jackson*, 107 W.Va. 138, 147 S.E. 541 (1929), also typifies this Court's decisions implementing the public policy purpose of the statute. There, a member of a county board of education had performed carpentry services in connection with a construction project that had begun before his induction into office. His employment was by the contractor, a Mr. Herring, who had contracted with the other two members of the board to supervise the project. Payment for the work was made by warrant to Herring. The defendant voted to authorize the payment and eventually presented it for payment and received some $47.00 for his services. The defendant board member's argument was that he worked for Herring, not the board of education, and was thus not subject to removal. The Court rejected this theory:

"Even if this were true, the statute covers such a situation. A member of the board will not be permitted to participate in the letting of a contract to one, and then derive benefit indirectly therefrom by working for the party obtaining the contract. The plain mandate of the statute denies him the right to receive a benefit by indirection where he may not profit directly.

"The purpose of the statute is to safeguard the public purse. It extends to all contracts or service in which a member 'may have any voice or control'. To permit a member of a district school board, by reason of non-action on his part in regard to a particular matter, to receive pecuniary benefit therefrom, either directly or indirectly, would defeat the very purpose of the statute, for it would permit connivance on the part of the several members and the awarding of contracts so as to inure indirectly to their

benefit." 107 W.Va. at 140, 147 S.E. at 542.

We believe the State proved a violation of the statute. Although we acknowledge that any ambiguity in a criminal statute must be strictly construed against the State,[6] the language of the statute brings the defendant's conduct clearly within its ambit. The statute is violated if one "be or become" pecuniarily interested in the proceeds of any contract or service over which as a member of a county commission he may have any "voice, influence or control." His contract with the PSD undoubtedly was a pecuniary interest. The only open question is whether his official position gave him any "voice, influence or control" over the PSD.

There can be little doubt that, as we have earlier noted, the Commission does by statute exercise control over a PSD. We have not had occasion to consider this precise factual setting. However, in other jurisdictions where a similar broad conflict of interest statute exists, courts have concluded that such indirect relations are covered. In *Kruse v. Streamwood Utilities Corp.*, 34 Ill.App.2d 100, 180 N.E.2d 731 (1962), village trustees had granted a franchise to the utility. Several of the trustees were members of an engineering firm that had a contract with the utility. This was found to be a conflict of interest.

*Kruse* relied heavily on *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961), where the government successfully defended against a contract suit by showing its principal negotiator had a conflict of interest under the federal statute. The Supreme Court upheld this result even though the government knew of the potential conflict. The Supreme Court spoke to the general purpose of conflict of interest statutes: "The obvious purpose of the statute is to insure honesty in the Government's business dealings by preventing federal agents who have interests adverse to those of the Government from advanc-

---

**6.** We recognized in *State ex rel. Anderson v. Board of Educ.*, 160 W.Va. 208, 216, 233 S.E.2d 703, 708 (1977), that W.Va.Code, 61–10–15 is a penal statute "which requires strict construction." *See also Dials & Smith v. Blair*, 144 W.Va. 764, 111 S.E.2d 17 (1959).

ing their own interests at the expense of the public welfare." 364 U.S. at 548, 81 S.Ct. at 308, 5 L.Ed.2d at 288.

It also answered the argument that without requiring a showing of some specific pecuniary gain this "would be a violation of the time-honored canon that penal statutes are to be narrowly construed," by stating: "But even penal statutes must be 'given their fair meaning in accord with the evident intent of Congress.' ... In view of the statute's evident purpose and its comprehensive language, we are convinced that Congress intended to establish a rigid rule of conduct...." 364 U.S. at 550–51, 81 S.Ct. at 309–10, 5 L.Ed.2d at 289.

In *Mississippi Valley*, the government agent was employed part-time to assist in negotiating a contract for the construction and operation of an electric power plant. The government contracting agency was the Atomic Energy Commission. The agent was a vice president and director of a large bank which ultimately provided some of the financing for the contractor who was building the plant under the government contract. The Supreme Court rejected the argument that because the agent had no authority to sign the building contract and that his negotiations preceded and were independent of the subsequent financing agreement, he had not transacted any business within the meaning of the statute,[7] stating:

"The question is not whether Wenzell [the agent] was certain to benefit from the contract, but whether the likelihood that he might benefit was so great that he would be subject to those temptations which the statute seeks to avoid.

\* \* \* \* \* \*

"[T]he statute establishes an objective, not a subjective, standard, and it is therefore of little moment whether the agent thought he was violating the statute, if the objective facts show that there was a conflict of interest." 364 U.S. at 560–61, 5 L.Ed.2d at 294–95, 81 S.Ct. at 314–15.

The reasoning of *Mississippi Valley* has influenced a number of state courts in the construction of their conflict of interest statutes. *E.g., People v. Watson,* 15 Cal. App.3d 28, 92 Cal.Rptr. 860, *cert. denied,* 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88 (1971); *People v. Savaiano,* 31 Ill.App.3d 1049, 335 N.E.2d 553 (1975); *Glazer v. Commission on Ethics for Public Employees,* 431 So.2d 752 (La.1983); *State v. Stoehr,* 134 Wis.2d 66, 396 N.W.2d 177 (1986).

The evidence reveals that the defendant acted affirmatively in nominating and voting for a present member of the PSD who, in that capacity, is in a position to oversee the performance of the defendant's services and to authorize payment therefor. Furthermore, the power that a county commission exercises over a PSD gives it considerable influence. These powers are not abstract, but point to the direct control that the commission can exercise over a PSD. Indeed, as the defendant admitted on cross-examination, he and another member of the commission had removed the members of another PSD from office. This could hardly have gone unnoticed by the PSD which had its contract with the defendant.

For these reasons, we conclude that upon becoming a member of a county commission, a person who is pecuniarily interested in the proceeds of any contract or service with a public service district violates the

---

7. The federal statute at that time was 18 U.S.C. § 434, which provided:

"Whoever, being an officer, agent or member of, or directly or indirectly interested in the pecuniary profits or contracts of any corporation, joint-stock company, or association, or of any firm or partnership, or other business entity, is employed or acts as an officer or agent of the United States for the transaction of business with such business entity, shall be fined not more than $2,000 or imprisoned not more than two years, or both."

It is noted that this statute did not provide for termination of a contract where a conflict of interest led to its formation. The Supreme Court in *Mississippi Valley, supra,* held that such result was warranted in order "to protect the public from the corrupting influences that might be brought to bear upon government agents.... This protection can be fully accorded only if contracts which are tainted by a conflict of interest on the part of a government agent may be disaffirmed by the Government." 364 U.S. at 563, 81 S.Ct. at 316, 5 L.Ed.2d at 296.

conflict of interest statute, W.Va.Code, 61–10–15, because such person by virtue of the position has some voice, influence or control over the continuation of the contract.

## II.

 The defendant next argues that the trial court erred in denying his motion to dismiss the conflict of interest indictment as insufficient, or to grant a bill of particulars. The general test for the sufficiency of an indictment is set forth in Syllabus Point 3 of *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983):

"An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based."

*See also, State v. Nester*, 175 W.Va. 539, 336 S.E.2d 187 (1985); *State v. Manns*, 174 W.Va. 793, 329 S.E.2d 865 (1985).

We conclude that the conflict of interest indictment is sufficient[8] and that the trial court did not err in denying the defendant's motion for a bill of particulars. The indictment is worded in language substantially equivalent to the statutory phraseology. The fact that it does not use the words pecuniary interest is not sufficient alone to invalidate the indictment, since there can be no doubt that the defendant was fully informed of the particular offense charged, and the nature of his interest.

The decision in *Myers v. Nichols*, 98 W.Va. 37, 126 S.E. 351 (1925), heavily relied on by the defendant, is distinguishable. There, a twenty-two page petition had been filed to remove a county commissioner from office which contained numerous allegations of irregular acts committed during a three year time period. One of the charges was that a business partially owned by the commissioner had sold merchandise and supplies to the county.

The court held this allegation of the petition was insufficient, but as subsequently explained in *Hunt v. Allen*, 131 W.Va. 627, 634, 53 S.E.2d 509, 514 (1948), the *Myers* case simply "held in effect that the petition was insufficient to connect the defendant ... with the transaction alleged to be a violation of the statute...." Here the indictment plainly informed the defendant that he was charged with becoming and remaining interested in the proceeds of providing services to the PSD.

There was no need in this case to grant a bill of particulars outlining the specific acts or conduct relied on by the prosecution under the indictment, since the act charged by the indictment was simply that the defendant by virtue of assuming office, had become pecuniarily interested in the proceeds of a contract in which by virtue of his position he may have had some influence or control. It was this contract that was the indictable event and there was no need for amplification by way of a bill of particulars. *See State v. Greater Huntington Theatre Corp.*, 133 W.Va. 252, 55 S.E.2d 681 (1949). Moreover, a trial court's ruling on a motion for a bill of particulars is largely discretionary. *E.g., State v. Ashcraft*, 172 W.Va. 640, 309 S.E.2d 600 (1983); *State v. Greer*, 130 W.Va. 159, 42 S.E.2d 719 (1947).

The defendant objected to State's Instruction No. 3,[9] which in general terms

---

8. The conflict of interest indictment under W.Va.Code, 61–10–15, reads as pertinent here:

"Frank D. Neary, in the one (1) year next preceeding [sic] the return of this indictment, and in the said County of Putnam, did unlawfully, as a member of the Putnam County Commission, become and remain interested in the proceeds of providing a service to the Kanawha Orchard Public Service District, in which and by virtue of his office he may have had, then and there, any voice, influence or control."

9. State's Instruction No. 3 provides:

"The Court further instructs the jury that the provisions of Chapter 16, Article 13A may be considered when deciding upon the verdict. Specifically, a Public Service District is created by a County Commission pursuant to W.Va.Code [Section] 16–13A–2, and that under this same code provision the County Commission retains the power to enlarge, reduce or dissolve any such public service district. Under W.Va.Code [Section] 16–13A–3 the County Commission has the power to appoint new members to the governing board of the public service district, and pursuant to W.Va.

summarizes the relationship between the county commission and a public service district, because the State did not prove the defendant became pecuniarily interested in the proceeds of a contract as the result of some action he took in his official capacity. As previously discussed, the State under the conflict of interest statute does not have to prove that the defendant became pecuniarily interested in the proceeds of a contract or service as a result of some act he took as a public official. It is sufficient if he had "any voice, influence or control" under W.Va.Code, 61–10–15. This portion of the defendant's challenge to the instruction is thus without merit.

The defendant further argues that even if it was proper to give the general instruction, State's Instruction No. 3 falsely describes the relationship between the county commission and a public service district. The defendant's principal claim is that the instruction does not fully state the law concerning the limited power of a county commission to remove a PSD member. W.Va.Code, 16–13A–3a, set forth in Note 5, *supra*, empowers the county commission to remove a PSD member for consistent violations of the law applicable to public service districts and for "reasonable cause." This is defined to include such conduct as the continued failure to attend meetings, to diligently pursue the objectives of the PSD, to perform any duty prescribed by law, or for any misconduct in office.

The issue here is not the extent of the control exercised, but the fact that control is present under the statutory scheme. Consequently, the failure to fully define all of the statutory circumstances that would warrant discharge was not required.

The defendant also objected to State's Instruction No. 6 [10] which defines the elements of proof necessary to obtain a conviction under the conflict of interest statute. The defendant's challenge to this instruction is based upon the same arguments made in regard to the sufficiency of the indictment and the sufficiency of the evidence. Having rejected those arguments earlier in this opinion, we find no merit in these contentions.

■ The defendant also contends the trial court erred in not giving Defendant's Instruction No. 3, as offered, which would have instructed the jury that a county commission has no direct or indirect influence or control over public service district boards and their award of contracts, hiring of employees, or other operational details. We find no error in the trial court's refusal to give this instruction as this was a misleading and incorrect statement of the law. It completely ignored the direct and indirect influence given by statute over the PSD. Our consistent holding on this issue is reflected in Syllabus Point 3 of *State v. Bolling*, 162 W.Va. 103, 246 S.E.2d 631 (1978):

"Instructions in a criminal case which are confusing, misleading or incorrectly state the law should not be given."

*See also* Syllabus Point 2, *State v. Saunders*, 175 W.Va. 16, 330 S.E.2d 674 (1985).

Moreover, the defendant's theory of the case was submitted to the jury. The jury was instructed that they must find the defendant not guilty unless they were con-

Code [Section] 16–13A–3a the County Commission has the power to remove such board members. Further, W.Va.Code [Section] 16–13A–10 requires the public service district to forward a copy of its budget, upon adoption, to the County Commission, and under Code [Section] 16–13A–11, the public service district is required to furnish a copy of its yearly audit to the County Commission within thirty (30) days of its completion."

**10.** State's Instruction No. 6 reads:

"The Court instructs the jury that if you find beyond a reasonable doubt that (1) Frank Neary as a Putnam County Commissioner, (2) between September 5, 1984, and September 4, 1985, (3) in Putnam County, West Virginia (4) was pecuniarily interested in the proceeds of providing a service to the Kanawha Orchard Public Service District, (5) which by virtue of his being a County Commissioner he may have any voice, influence or control over such decision by Kanawha Orchard Public Service District to contract with him, then you should find Frank Neary guilty as charged in Indictment 85–M–59.

"If the jury has a reasonable doubt as to any one or more of the elements, then you should find the defendant not guilty."

vinced beyond a reasonable doubt, that because of his official position as a member of the county commission, he may have had any voice, influence or control over the actions of the PSD in awarding contracts or providing for services to the PSD, and that the defendant's own employment by the PSD could have been influenced or controlled by the defendant because of his position on the county commission.

### III.

▉ The defendant also challenges his conviction under W.Va.Code, 61–5A–4, a provision of the Bribery and Corrupt Practices Act.[11]

The facts surrounding this offense are also simple and not in dispute. In May, 1984, the commission was approached by sales representatives of Telemarketing Communications of West Virginia (TMC) with regard to the purchase of a long-distance discount telephone service. After a presentation by these representatives, the commission decided to purchase the telephone services which would permit various county government offices to dial a computer in Charleston to place long-distance calls more economically. The agreement provided for the county to purchase several code numbers for use in dialing the centralized computer.

After the commission made the decision to purchase the telephone services and the sales representatives had left the commission meeting, one of them remembered that they had forgotten about the bonus tele-

phone code cards. These were normally given without charge to business purchasers who wished to use them from their residential telephones. The TMC representative then reentered the commission meeting and inquired whether the commissioners ever had occasion to conduct county business using their home telephones. Upon being advised that this occasionally occurred, each commissioner was given a code number on a plastic card for use with his residential telephone.

The testimony indicated that such cards were given as a matter of course to business purchasers. The record also shows that TMC competitors also gave free telephone access cards for use on residential telephones. The evidence is undisputed that the defendant did not know he would get the free card when he voted for the telephone services. Most importantly, he could not utilize the card in any event because he did not have a touchtone telephone.

The defendant argues, among other things, that the evidence is insufficient to prove beyond a reasonable doubt that he accepted a pecuniary benefit. A "pecuniary benefit" is, as the defendant points out, defined in W.Va.Code, 61–5A–2(8),[12] to include, tangible or intangible property, "or anything else the primary significance of which is economic gain." The defendant argues that the card containing the residential access code does not have as its primary significance economic gain. The

---

**11.** W.Va.Code, 61–5A–4, as material here, provides:

"(a) It shall be unlawful for any person to solicit, accept or agree to accept, directly or indirectly, a pecuniary benefit for: (1) Having engaged in official action as a public servant; or (2) Having violated a legal duty as a public servant. (b) It shall also be unlawful for any person to offer, confer or agree to confer, directly or indirectly, a pecuniary benefit, the receipt of which is prohibited by subsection (a) of this section."

**12.** The definitional section of the Bribery and Corrupt Practices Act, W.Va.Code, 61–5A–2(8), reads in its entirety:

" 'Benefit' means a gain or advantage, or anything regarded, or which might reason-

ably be regarded, by the beneficiary as a gain or advantage, including a gain or advantage to any other person; and *'pecuniary benefit' means a benefit in the form of money, tangible or intangible property, commercial interests or anything else the primary significance of which is economic gain;* but the terms 'benefit' and 'pecuniary benefit' shall not be construed so as to include (a) salary, fees and other compensation and expenses paid by the government or political party or political party committee in behalf of which the official action or legal duty is performed, or (b) concurrence in official action in the course of legitimate compromise among public servants, or (c) wages, salary or fees or other compensation paid to a public servant when the reason for such payment is not to affect his official impartiality." (Emphasis added.)

defendant stresses the fact that the purpose of the defendant having the card was to enable him to conduct official county business from his home and, as such, it cannot be considered as a pecuniary benefit within the meaning of the statute.

We agree with the defendant's argument that the acceptance by a county commissioner of a card containing a telephone access code does not constitute a "pecuniary benefit" as defined in W.Va.Code, 61–5A–2(8), where the purpose of the card is to facilitate a commissioner's ability to perform the county commission's business.[13] More fundamentally, it is not disputed that the card could not be used by the defendant as he did not have the right type of telephone in his home.

Because we find the defendant's conviction of having accepted a pecuniary benefit must be reversed for insufficient evidence, we conclude that it is unnecessary to address his other assignments of error concerning this offense.

For the foregoing reasons, the defendant's conviction under the conflict of interest statute is affirmed; however, his conviction for accepting a pecuniary benefit is reversed for insufficient evidence, and the case is remanded to the trial court for the entry of a judgment of acquittal on that charge under Rule 29(a) of the West Virginia Rules of Criminal Procedure.

Affirmed in part, reversed in part, and remanded with directions.

---

**13.** Use of an official credit card for his official business is perfectly proper. *Cf. Powers v. Goodwin,* 170 W.Va. 151, 154, 291 S.E.2d 466, 469 (1982) (misuse of county commission credit card for personal business). *See United States v. Arthur,* 544 F.2d 730, 735 (4th Cir.1976).