371 S.E.2d 633

**STATE of West Virginia**

v.

**Larry Dean NEAL.**

**No. 17577.**

Supreme Court of Appeals of West Virginia.

July 22, 1988.

---

12. By this opinion we do not countenance, in the typical civil case, a blanket designation of the entire trial court file.

Lee H. Adler, Beckley, for Larry Dean Neal.

Charles G. Brown, Atty. Gen., Charleston, for State.

PER CURIAM:

This case is before the Court upon the appeal of Larry Dean Neal from an order of the Circuit Court of Raleigh County, denying his motion to set aside his conviction of malicious wounding and attempted murder, and sentencing him to consecutive terms of two-to-ten years and one-to-five years.[1] The jury also answered affirma-

---

1. Malicious wounding is defined in *W.Va.Code*, 61–2–9(a) [1978] as:

   (a) If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony, and, upon conviction, shall, in the discretion of the court, ei-

ther be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars. *W.Va.Code*, 61–11–8 [1966] classifies attempts as:

   Every person who attempts to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished as follows: If the offense attempted be punishable with life imprisonment, the person making such attempt shall be guilty of a felony, and, upon conviction, shall be confined in the penitentia-

tively on firearm interrogatories submitted for each count. The appellant contends that his convictions should be reversed because, among other issues: (1) the trial judge erred when he admitted certain expert testimony concerning the appellant's mental capacity; (2) the indictment for attempted murder was defective. The appellant also contends that the trial judge abused his discretion when he ordered the sentences to run consecutively.

In July of 1983, Officers Lilly and Peck cited Neal for reckless driving in Beckley, West Virginia. Both officers testified that the appellant was very cooperative and followed all instructions. Fifteen minutes after he received the ticket, Neal went to the local police department and admittedly deceived a clerk. He stated that the officers who previously cited him accidentally kept his license. The clerk summoned Lilly, who went to his cruiser to search for the allegedly missing license. Neal later followed Lilly outside, stating to the clerk that he had parked his vehicle near the cruiser.

Lilly searched the vehicle and was returning to the station when Neal fired three shots to his throat, left arm, and right side, critically injuring him. For the remainder of the incident, Lilly was unconscious.

Within seconds, Officer Sweeney appeared on the scene. Neal and Sweeney were within forty feet of one another, with the parked cruiser between them. Sweeney hunched behind one side of the cruiser, rose, drew his weapon and ordered Neal to stop. Neal, while continuing to flee, fired at Sweeney. The bullet lodged in the blue light on top of the cruiser, which was in the vicinity of Sweeney's head.

Two other officers then appeared and attended to Lilly while Officer Sweeney pursued Neal. At this point, there is conflicting testimony. Sweeney testified that the appellant fired another shot in his direction. Neal testified he attempted to commit suicide by firing at his own head, but was unsuccessful. The bullet was not recovered.

Sweeney apprehended Neal, and admitted that he threatened to kill Neal. He and another officer escorted Neal to the station. Both officers testified that following *Miranda* warnings, Neal asked if Officer Lilly was alive. When the officers indicated that they did not know Lilly's status, Neal alleged responded, "I should have shot the m____ f____ again." [2] During a custodial interrogation, Neal stated that he had shot Lilly because he was very depressed and had, just prior to the shooting, been involved in an argument concerning his inability to purchase marihuana.[3]

ry not less than one nor more than five years. If it be punishable by confinement in the penitentiary for a term less than life, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than six nor more than twelve months, and fined not exceeding five hundred dollars. If it be punishable by confinement in jail, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not more than six months, or fined not exceeding one hundred dollars.

W.Va.Code, 61–2–1 [1923] defines first and second degree murder as follows:

Murder by poison, lying in wait, imprisonment, starving, or by any wilful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, rape, robbery or burglary, is murder of the first degree. All other murder is murder of the second degree.

In an indictment for murder and manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death of the deceased was caused, but it shall be sufficient in every such indictment to charge that the defendant did feloniously, wilfully, maliciously, deliberately and unlawfully slay, kill and murder the deceased.

**2.** After an *in camera* hearing concerning the testimony of the two officers and Neal, who denied making the statement, the trial judge admitted the statement as part of the *res gestae.* The accused assigns the admission of this testimony as error. Without citing any authority, the accused contends that the trial judge should have refused to admit the evidence because it was "manufactured." We find no merit to this assignment of error. *See State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986) and cases cited therein.

**3.** The accused assigns the admission of the pretrial statement as error. In his statement, the accused said he was upset because, just prior to the shooting, a person would not sell him marihuana and the accused proceeded to fight with him. The accused had previously prevailed on

Neal was indicted on three counts: count 1, listed on the indictment as felonious assault (of Lilly); count 2, listed as attempted murder (of Lilly); count 3, listed as attempted murder (of Sweeney).

Count 2 was dismissed during the trial. The jury convicted the accused of count 1, felonious assault (of Lilly) and count 3, attempted first degree murder (of Sweeney) and affirmatively answered interrogatories regarding the use of a firearm for each count. The jury was also instructed as to the insanity defense and the lesser-included misdemeanor offenses of battery for count 1 and attempted second degree murder for count 3.

Neal's primary defense to both charges was that he was incompetent at the time of the shooting.

Prior to trial, the Court ordered an examination of Neal by a psychiatrist, Dr. Thomas Knapp, and testing by a psychologist, Donald Swick "for the purpose of determining the Defendant's criminal responsibility for the crimes he stands charged."

The accused's experts were psychiatrist, Dr. John MacCallum, and psychologist Hall, who performed tests pursuant to Dr. MacCallum's request. Of the four experts, only Dr. MacCallum testified on Neal's behalf. The other three were the State's witnesses.

All four experts agreed that the tests performed by the two psychologists do not reflect that the accused has any type of severe mental disease or defect. All four experts agreed that Neal suffers from depression. Their differences were merely in a matter of degree of depression and the effect of depression on one's ability to render rational responses.

Dr. MacCallum, the accused's only expert, testified that the appellant had suffered from a major depressive disorder of some seven years duration. As a result of this depression, Dr. MacCallum testified that the accused was unable to conform his behavior to the requirements of the law. Dr. MacCallum explained:

> [T]he severity and the intensity of his depression left him so much without self-esteem and inner emotional control that when all of this happened, he was unable to think about anything else except the expression of the anger and under those circumstances he did not think about the consequences of his behavior. He may have been able to appreciate the directiveness of his behavior, but that was only because his goal was to express the anger.

Dr. MacCallum admitted that the accused's test results did not reveal such problems; however, his diagnosis was largely based on interviews with the accused which revealed a history of personal failures culminating on the night of the shooting.[4]

a motion to suppress the statement because of the officers' failure to take Neal before a magistrate. Later, the accused sought to cross-examine the officers with that part of the statement where Neal said he was upset prior to the shooting incident. The trial judge ruled that, based upon the rule of completeness (*W.Va.R.Evid.* 106), if the accused intended to use that part of the statement, the State would be free to introduce the rest of the statement concerning Neal being upset due to the attempted marihuana purchase. See F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 9.1(B) (2d ed. 1986), concerning the exercise of discretion by a trial judge in admitting complete statement for fundamental fairness. The accused elicited the testimony, therefore, he is not entitled to raise its admission on appeal. Syl. pt. 2, *State v. Harshbarger*, 170 W.Va. 401, 294 S.E.2d 254 (1982).

**4.** Neal was 26 at the time of the shooting, has a high school diploma and an average to superior IQ. He is one of thirteen children. His parents are religious, blue-collar persons; his siblings are rather successful. In 1975, he graduated high school and decided to join the Air Force. Neal wanted to be a photographer, however, his military assignment was as a supply clerk. Within a year of service, Neal testified that he attempted suicide by drinking and taking prescription pills. He was given a general discharge shortly thereafter. In 1976 he returned home and worked sporadically. In 1978 he was awarded a 70% veteran's disability for emotional problems. In 1980 he moved from his family home due to a violent outburst where he destroyed furniture. In 1982 the appellant attended classes for electronics. The cost of the training program was roughly $1000, which was paid by the Veterans Administration (VA). In July of 1982 he also purchased a gun and testified he intended to commit suicide with it. He also testified to other instances of attempted overdoses.

Psychologist Hall, who performed the psychological tests for Dr. MacCallum, was called as a witness for the State and testified that his test results did reveal a major depressive disorder. However, he opined that major depressive disorders do not render one incapable of appreciating the wrongfulness of his acts or conforming his acts to the requirements of the law.

State psychiatrist Knapp testified that based on an interview with Neal and the testing performed by the State's psychologist, Swick, the accused suffers from a mild to chronic depressive disorder, common to most persons, which does not render one incapable of making rational responses. Psychologist Swick testified that his test results confirmed Dr. Knapp's findings.

Neal testified and admitted to entering the station with a gun and lying about the license. He denied firing at Officer Sweeney twice, but admitted firing once. In explaining his behavior, Neal stated he "just snapped."

### I

The appellant makes several assignments of error concerning trial court rulings on the distinction between competency to stand trial and criminal responsibility at the time of the shooting. These assignments amount to essentially two arguments. First, he contends that the psychologists and Dr. Knapp should have been precluded from rendering opinions concerning Neal's mental state at the time of the shooting since they examined Neal for the purpose of determining competency to stand trial.[5] Second, the accused contends that the trial judge erred when he permitted the prosecutor in his closing statement to make reference to the accused's mental status at the time of trial, since his defense was lack of criminal responsibility at the time the crime was committed.

This Court has specifically chosen not to address the parameters of psychiatric testimony in criminal cases where the insanity defense has been utilized. *State v. McFarland,* 175 W.Va. 205, 220, 332 S.E.2d 217, 232 (1987). However, as the appellant notes, we have distinguished between competency to stand trial and criminal responsibility at the time of the crime's commission. *State ex rel. Smith v. Scott,* 167 W.Va. 231, 280 S.E.2d 811 (1981).

In *Smith,* while we noted that these are two distinct issues, evidence or data collected for the purposes of establishing one may be relevant for the other:

> We repeat for emphasis, and lest we be misunderstood, that evidence as to insanity at any time—the present as well as any other—may be admitted insofar as it is relevant to the mental condition of the accused at the time of the offense; that is where it is used by a witness as part of the data upon which he bases a conclusion as to the mental condition at the time of the offense.

*State ex rel. Smith v. Scott,* 167 W.Va. 231, 235, 280 S.E.2d 811, 814 (1981).

We recently reaffirmed *Smith* in syllabus point 5 of *State v. McWilliams,* 177 W.Va. 369, 352 S.E.2d 120 (1986), which states that: "When the accused's mental

---

In the early evening hours of July 3, 1983, he received notice from the VA that his benefits would be discontinued and that he was required to repay the $1000 for his electronics training. That evening he went to work, as a cab driver, feeling "anger and disappointment." After work, in the early evening hours of July 4, 1983, he was stopped by police officers for excessive speed. Neal knew that if he received a speeding ticket, his license would be revoked as he was driving 75 miles per hour on a city street and had received previous citations. He felt the officers were "somewhat a little discourteous" to him. Neal testified that something "just snapped," and within fifteen minutes he went to the police station and concocted the story.

5. There is no explanation for the apparent confusion as to the type of mental examinations that was conducted. Dr. Knapp and psychologists Swick and Hall were asked by defense counsel if they had examined the accused for the purpose of determining competency to stand trial. All admitted they had done so. The trial court order for psychiatric evaluations states that the evaluations were for the purpose of determining the accused's "criminal responsibility for the crimes he stands charged." Psychologist Hall performed the tests pursuant to the appellant's psychiatrist, Dr. MacCallum's request. None of the psychiatric or psychological reports were made part of the record.

condition at the time of the offense is an issue, evidence of the accused's mental condition either before or after the offense is admissible so far as it is relevant to the accused's mental condition at the time of the offense."

The trial judge ruled that the experts could testify regarding criminal responsibility at the time of the shooting, regardless of the fact that their information was gathered for the purposes of determining competency to stand trial. In doing so, the judge stated, "the medical data, if it is medical data, and I think it is classified as that, is data for whatever purposes.... if a man has an IQ of 105, he has an IQ of 105, that's whether it is to stand trial or to find out whether he knew what he was doing on [the date of the crime], ..." The trial judge's ruling is consistent with our holdings in *Smith* and *McWilliams* and will not be reversed.

■ The appellant next contends that the trial judge erred when he permitted the prosecutor in his closing statement to argue that Neal did not appear (at trial) to be suffering from a mental illness.

The appellant's objection on grounds of relevancy was overruled by the trial judge. The standard for appellant review of relevancy determinations is stated in syllabus

point 4 of *State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983):

'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus Point 10, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955).

The appellant asks this Court to adopt the reasoning applied in *U.S. v. Fortune,* 513 F.2d 883 (5th Cir.1975) and find that the trial judge abused his discretion. Our research reveals that *Fortune* is inappropriate.[6]

As previously noted in *McWilliams, supra* and *Smith, supra,* evidence of the accused's mental condition subsequent to the crime may be admitted when relevant. In this case the defense was that the accused was suffering from a long-term, ongoing depression, for which he had not been treated prior to trial. Given the nature of the defense, and the trial judge's instruction to the jury that they must determine the competency of the accused at. the time of the crime, the trial judge did not abuse his discretion in permitting the prosecutor to argue that the accused did not appear to be suffering from a mental disease or defect at the time of trial.[7]

6. *U.S. v. Fortune* 513 F.2d 883 (5th Cir. Tex. 1975), *rehg. denied,* 518 F.2d 1407 (5th Cir. Texas 1975), *cert. denied, Fortune v. U.S.,* 423 U.S. 1020, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975) concerned the limits of former 18 U.S.C. 4244 (1949) which prohibits the State from introducing a trial judge's prior order finding the accused competent to stand trial where the defense is insanity at the time of the commission of the crime. *(See* 18 U.S.C. 4241(f) (1984). "The Insanity Defense Reform Act of 1984," for the current provision, which is substantially similar to former § 4244. No similar provision exists in *W.Va.Code,* 27–6A–1 [1983]. In *Fortune,* the defense was insanity at the time the crime was committed. The court *affirmed* the conviction of the accused even though substantial questioning of experts by the prosecutor concerned the accused's competency to stand trial. In its affirmance, the court refused to interpret 18 U.S.C. 4244 as applying to references of competency to stand trial, other than the introduction of the actual order finding the accused competent to stand trial. In *Fortune,* as in this case, no attempt was made by the prosecutor to introduce such a judicial finding.

7. The accused also contends that the trial judge erred when he refused to order that the testing performed by psychologist Swick be tape-recorded. Defense counsel objected in the pretrial order refusing the taping. At trial, however, defense counsel objected to Swick's testimony on different grounds. (The objection at trial was the previously discussed objection concerning Swick's examination for competency, and his ability to testify concerning criminal responsibility). Pretrial objections, not renewed at trial, are waived. *State v. Linkous,* 177 W.Va. 621, 355 S.E.2d 410, 414 (1987). Therefore, we need not address the applicability of *State v. Jackson,* 171 W.Va. 329, 298 S.E.2d 866 (1982) to situations where tests alone are conducted. Appellant Neal's brief and the testimony clearly reveal that Swick "did not interview him, did not ask him anything about what happened on the evening in question, never took a family history ... he entirely based his testimony that he gave to the jury upon the tests ..."

## II

The accused makes two arguments concerning the sufficiency of the indictment for count 3. Count 3 is listed on the indictment as "attempted murder" (of Sweeney) and cites *W.Va. Code*, 61–11–8 (1966). The code reference is to the classification of attempts. *See* note 1, *supra*. The indictment then avers that Neal attempted to kill Sweeney by using a firearm.

■ The accused contends that count 3 contains the statutory elements of two separate offenses: attempted malicious wounding and attempted murder. Therefore, the indictment insufficiently notified him of the crime of attempted murder and is insufficient to support a conviction for attempted first degree murder. Attempted first degree murder is a felony, attempted second degree murder and attempted malicious wounding are misdemeanors. *See* note 1, *supra*.

'An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syllabus Point 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983).

*State v. Neary*, 179 W.Va. 115, 365 S.E.2d 395 (1987).

First, the record reveals that at all pretrial hearings, and during trial, the accused was fully aware that count 3 was an indictment for attempted murder. No bill of particulars was requested pursuant to *W.Va.R.Crim.P.* 12(b)(2) (1981), and all arguments by defense counsel refer to count 3 as attempted murder. "[T]here can be no doubt that the accused was fully informed of the particular offense charged." *State v. Neary*, 179 W.Va. 115, 121, 365 S.E.2d 395, 401 (1987).

Second, relying on *State v. Watson*, 99 W.Va. 34, 127 S.E. 637 (1925), the accused contends that the indictment is invalid as it must be read as charging the accused with attempted malicious wounding only, since malicious wounding is not a lesser included offense of the statutory indictment for murder.

The accused's reliance on *Watson* is misplaced, as *Watson* concerned a statutory indictment for murder. The statutory indictment for murder does not require the State to aver the manner in which the offense was committed. *Code*, 61–2–1 [1931]. As noted in *Watson, State v. Lutz*, 85 W.Va. 330, 101 S.E. 434 (1919) and *Holland v. Coiner*, 293 F.Supp. 203 (N.D.W.Va.1968), when the State avers facts concerning the commission of murder, the indictment may enable the accused to receive a lesser included offense instruction based on the additional facts contained in the indictment. None of these cases suggest that the additional averment concerning the manner in which the murder was committed constitutes a separate offense.

Under *Neary, supra*, the indictment for attempted murder is not void as the accused was adequately informed of the charge against him and the indictment substantially followed the language of the murder statute.

■ The accused also contends that the evidence was insufficient to support an attempted first degree murder conviction. The jury was instructed on the elements of first and second degree murder. Under the *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978) standard, we find no merit in this argument. To prove an attempt, the State must show intent and an overt act, *State v. Franklin*, 139 W.Va. 43, 79 S.E.2d 692 (1953). Viewed in the light most favorable to the prosecution, the accused admitted entering the police station and deceiving the clerk about the loss of his license. He admitted to shooting at Officer Sweeney within a forty-foot range. Officer Sweeney then testified that the accused refused to stop and fired again in his direction.

## III

■ The appellant's final assignment of error concerns the proportionality of his sentence. The petitioner was convicted of malicious wounding (of Lilly), which carries a sentence of two to ten years, and attempted first degree murder (of Sweeney),

which carries a sentence of one to five years. The jury answered affirmatively on firearm interrogatories for both counts. *W. Va. Code*, 62–12–13(a)(1)(A)(ii) [1981]. The trial judge sentenced the accused to two to ten years for malicious wounding and one to five years for attempted murder with the sentences running consecutively.

The accused moved for reduction of his sentence and urged the trial court to run the sentences concurrently. *See W. Va. R. Crim. P.* 35. The trial court denied the motion, noting that the accused had seriously injured one officer and attempted to murder another. " 'Sentences imposed by the trial court, if within statutory limits and if not based on some impermissible factor, are not subject to appellate review.' Syl. pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. pt. 6, *State v. Bennett,* 172 W.Va. 123, 304 S.E.2d 28 (1983).

The trial judge's sentences were in accord with the statutory guidelines for attempted malicious wounding and attempted first degree murder. No impermissible factors were considered in the initial sentence or in the court's denial of the rule 35 motion; therefore, the accused's contention that the trial judge violated the accused's right to a proportional sentence under *W. Va. Const.* art. III, § 5 is without merit.[8]

For all the foregoing reasons, the trial court's rulings are affirmed.

AFFIRMED.

---

8. The accused also assigns as error a letter he received from the West Virginia Board of Probation and Parole, which states that "it appears" as though the accused would have to serve six years prior to parole consideration due to the two consecutive sentences with two affirmative firearm interrogatories. He contends that the Board's interpretation of the firearm statute, *Code,* 62–12–13, *et seq.* [1981], is beyond the legislative intent of the statute. No final decision of the parole board appears in the record. No authority or statutory provision to evince the lack of such intent is cited. We therefore find this assignment of error without merit.

We also reject counsel's contention that the trial judge committed reversible error by interrupting or correcting counsel on several occasions. As counsel admits, most of these instances occurred out of the presence of the jury. We also note the trial judge admonished the prosecuting attorney, as well as defense counsel. The trial judge was within his "right to control the orderly process of a trial" and no prejudice resulted due to his intervention. *State v. Holmes,* 177 W.Va. 236, 351 S.E.2d 422 (1986); syl. pt. 4, *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979). *See also W. Va. R. Evid.* 611(a) effective February 1, 1985.

Further, under *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983), we reject the accused's argument that this case should be reversed due to cumulative error.